*13*

United States District Court
Southern District of Texas
FILED

APR 0 9 2003

Michael N. Milby
Clerk of Court

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAIME PEQUENO-MARTINEZ | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. B-02-214 |
| | ) | |
| E.M. TROMINSKI, INS DISTRICT | ) | |
| DIRECTOR, | ) | |
| and | ) | |
| JOHN ASHCROFT, ATTORNEY | ) | |
| GENERAL OF THE UNITED STATES. | ) | |

### ADVISAL TO THE COURT

Jaime Pequeno-Martinez, Petitioner, submits this Advisal to the Court and respectfully requests that the Honorable Court take note of the following:

1) The proposed Regulations of the Department of Justice which address the eligibility for 212(c) relief. 87 Fed. Register 156 (August 13, 2002). These proposed regulations are referenced in various pleadings on file with this Honorable Court. A copy of the proposed regulations are attached as Exhibit A; and

2) The Report and Recommendation of U.S.Magistrate Felix Recio in *Salazar-Regino v. E.M. Trominski, et al*, Cause No. B-02-045, pending before the U. S. District Court for the Southern District of Texas, Brownsville Division. The case contains similar issues relating to retroactivity analysis, due process, equal protection and the definition of "conviction" in immigration law. A copy of the Report is attached hereto as Exhibit B.

Respectfully Submitted,

*Paula S. Waddle*

Paula S. Waddle, Attorney in Charge
South Texas Immigration Council
107 N. 3rd
Harlingen, TX 78550
(956) 425-6987
(956) 425-7434(fax)
Tx. Bar  No 26030400
U.S. Southern. Dist. Tx. I.D. No.5674

## CERTIFICATE OF SERVICE

I, Paula S. Waddle, hereby certify that a copy of this Advisal was mailed by first class
mail to  Ms. Lisa Putnam, SAUSA, INS District Office, P.O. Box 1711, Harlingen,
Texas,  on  the 8th day of April, 2003.

*Paula S. Waddle*

Paula S. Waddle

A

52627

**Federal Register**
Vol. 67, No. 156

Tuesday, August 13, 2002

# Proposed Rules

This section of the FEDERAL REGISTER contains notices to the public of the proposed issuance of rules and regulations. The purpose of these notices is to give interested persons an opportunity to participate in the rule making prior to the adoption of the final rules.

**DEPARTMENT OF JUSTICE**

**Immigration and Naturalization Service**

**8 CFR Parts 3, 212, and 240**

**[EOIR No. 130l; AG Order No. 2607–2002]**

**RIN 1125–AA33**

**Executive Office for Immigration Review; Section 212(c) Relief for Aliens With Certain Criminal Convictions Before April 1, 1997**

**AGENCY:** Executive Office for Immigration Review, Justice.

**ACTION:** Proposed rule.

**SUMMARY:** This proposed rule would amend the regulations of the Executive Office for Immigration Review (EOIR) and the Immigration and Naturalization Service (INS) by establishing procedures for lawful permanent residents (LPRs) with certain criminal convictions arising from plea agreements reached prior to a verdict at trial to apply for relief from deportation or removal pursuant to former section 212(c) of the Immigration and Nationality Act. It also sets forth procedures and deadlines for filing special motions to seek such relief before an Immigration Judge or the Board of Immigration Appeals for LPRs currently in proceedings or under final orders of deportation or removal.

**DATES:** Written comments must be submitted on or before October 15, 2002.

**ADDRESSES:** Please submit written comments to Charles Adkins-Blanch, General Counsel, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2400, Falls Church, Virginia 22041. E-mail comments may be submitted to the following e-mail address: <212crule@usdoj.gov>.

**FOR FURTHER INFORMATION CONTACT:** For matters relating to the Executive Office for Immigration Review: Charles Adkins-Blanch, General Counsel, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2400, Falls Church, Virginia 22041, telephone

(703) 305–0470 (not a toll-free call). For matters relating to the Immigration and Naturalization Service: Daniel S. Brown, Office of the General Counsel, Immigration and Naturalization Service, 425 I Street, NW., Room 6100, Washington, DC. 20536, telephone (202) 514–2895 (not a toll-free call).

**SUPPLEMENTARY INFORMATION:** This proposed rule would permit certain lawful permanent residents (LPRs) who have pleaded guilty or nolo contendere to crimes before April 1, 1997, to seek relief, pursuant to former section 212(c) of the Immigration and Nationality Act (INA or Act), from being deported or removed from the United States on account of those pleas. Under the proposed rule, eligible LPRs currently in immigration proceedings or former LPRs under a final order of deportation or removal could file a request to apply for relief under former section 212(c) of the Act, as in effect on the date of their plea, regardless of the date the plea was entered by the court.

Until the recent Supreme Court decision in *INS* v. *St. Cyr*, 533 U.S. 289 (2001), the Department had relied upon the date on which the alien was placed into deportation or removal proceedings to determine whether or not an LPR was eligible to apply for section 212(c) relief, not the date of the alien's conviction. This proposed rule would allow aliens with prior criminal pleas to apply for waivers under former section 212(c), under the law as it existed at the time of their pleas, in light of the Court's interpretation of the law in *St. Cyr.* The Department would continue to treat convictions entered as the result of a trial as it had prior to *St. Cyr.* Former LPRs who are under a final order of deportation or removal would also be eligible to apply for relief under former section 212(c) of the INA as it existed at the time of their pleas. This proposed rule is applicable only to certain eligible aliens who were convicted by pleas made prior to April 1, 1997.

**What Is the Historical Background of This Rule?**

*Former section 212(c) of the INA.* Since 1996, section 212(c) of the INA has undergone two major changes, the first one made by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214, and the second by the Illegal Immigration Reform and Immigrant

Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104–208, Div. C, 110 Stat. 3009–546. The first amendment narrowed the availability of the waiver by making LPRs with certain kinds of criminal convictions ineligible. The second amendment eliminated the section 212(c) waiver entirely for LPRs placed into removal proceedings on or after April 1, 1997, and substituted a somewhat similar form of relief known as cancellation of removal. See INA § 240A(a), 8 U.S.C. 1229b.

These amendments of section 212(c) generated extensive litigation, as discussed below, culminating in the Supreme Court's recent decision in *St. Cyr.* This rule consolidates the Department's interpretation of the availability of the section 212(c) waiver for LPRs in light of this litigation.

Before the comprehensive revision of the INA by IIRIRA and AEDPA, section 212(c) provided that LPRs who temporarily proceeded abroad voluntarily and not under an order of deportation, and who were returning to a lawful unrelinquished domicile in the United States of seven consecutive years, could be admitted to the United States in the discretion of the Attorney General. 8 U.S.C. 1182(c) (1994). This form of relief was discretionary, but, if granted, allowed the LPR to remain in the United States notwithstanding the prior conviction. Judicial interpretation of former section 212(c) permitted the waiver of certain grounds of deportability as well as certain grounds of excludability (now known as inadmissibility).

*Litigation on eligibility for section 212(c) relief.* In AEDPA, Congress significantly restricted the availability of discretionary relief from deportation under section 212(c). Section 440(d) of AEDPA made aliens ineligible for relief under section 212(c) if they were deportable because of convictions for certain criminal offenses, including aggravated felonies, controlled substance offenses, certain firearms offenses, espionage, or more than one crime of moral turpitude.

On February 21, 1997, former Attorney General Janet Reno concluded that section 440(d) applied to (and thereby rendered ineligible for section 212(c) relief) all aliens who had committed one of the specified offenses and who had not finally been granted section 212(c) relief before the date



EXHIBIT

A

AEDPA was enacted, including those who were already in deportation proceedings or who had already applied for section 212(c) relief at the time of the AEDPA's enactment. *See Matter of Soriano,* 21 I. & N. Dec. 516 (BIA 1996, A.G. 1997).

The *Soriano* issue gave rise to widespread litigation in almost every circuit on several time and reliance-related eligibility issues. These issues included the possible relevance of various other dates in determining whether or not a particular alien was eligible to apply for section 212(c) relief: the date the alien was placed into proceedings; the date the alien applied for section 212(c) relief; the date any relevant crimes were committed; and the date any relevant pleas or convictions were entered. *See* 66 FR 6436, 6437–38 (Jan. 22, 2001) for a more detailed summary of this litigation.

Most of the courts of appeals held that, despite the changes made by AEDPA, aliens who had filed applications for section 212(c) relief before the enactment of AEDPA were still eligible for that relief. One court further held that AEDPA did not apply to aliens who had been placed into deportation proceedings before the enactment of AEDPA, even if they did not actually request section 212(c) relief until after AEDPA was enacted.

With respect to aliens who were first put into proceedings after the enactment of AEDPA, several courts held that AEDPA section 440(d) foreclosed section 212(c) relief for those aliens, even if their criminal convictions occurred before the enactment of AEDPA. Some other courts, however, had concluded that AEDPA should not be interpreted to foreclose section 212(c) relief, at least with respect to aliens who had pleaded guilty and were convicted of crimes prior to AEDPA in reliance on the existing immigration laws—at a time when those convictions did not disqualify the alien from eligibility to apply for section 212(c) relief.

*The Department's Soriano regulation.* In response to this extensive litigation, the Department issued a rule creating a uniform procedure for applying the law, as amended by AEDPA, with respect to aliens who had been placed into proceedings before that law was enacted (April 24, 1996). *See* 66 FR 6436 (Jan. 22, 2001) (codified at 8 CFR 3.44) (the Soriano rule). That rule allowed all eligible LPRs who had been placed into proceedings prior to April 24, 1996, to apply for relief under section 212(c), under the pre-AEDPA standards, and also provided a 180-day period for aliens with final orders of deportation who were adversely affected by the Attorney General's ruling in Soriano to move to reopen their proceedings. That 180-day period for motions to reopen ended on July 23, 2001.

*The Supreme Court's Decision.* On June 25, 2001, the Supreme Court issued its decision in *INS* v. *St. Cyr,* 533 U.S. 289 (2001), which held that "§ 212(c) relief remains available for aliens * * * whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 533 U.S. at 326. As a matter of statutory construction, based on concerns about the retroactive application of IIRIRA to aliens who may have negotiated plea agreements in reliance on the continued availability of section 212(c) relief, the Court concluded that Congress had not made clear in IIRIRA an intent to deny such aliens the opportunity to seek such relief once they were placed into proceedings. Thus, the Court looked to the law as of the date of the alien's plea agreement to determine whether the alien was eligible to apply for section 212(c) relief, rather than the date the deportation or removal proceedings commenced. Although the Supreme Court addressed only the IIRIRA amendment and not the AEDPA limitation on section 212(c) relief, the reasoning of *St. Cyr* applies equally to section 440(d) of AEDPA. Indeed, the Supreme Court's above-quoted statement of the holding is best read to encompass section 440(d) of AEDPA. *See, e.g., Attwood* v. *Ashcroft,* 260 F.3d 1, 3 (1st Cir. 2001) (holding that, in light of the Supreme Court's decision in *St. Cyr,* an alien who pleaded guilty prior to the date of AEDPA's enactment and was placed into proceedings before IIRIRA is eligible to apply for section 212(c) relief).

## Why Is the Department Issuing This Proposed Rule?

In light of the recent Supreme Court decision in *St. Cyr,* this proposed rule would provide procedures for eligible aliens to apply for section 212(c) relief before an Immigration Judge or the Board of Immigration Appeals. Because this proposed rule would revise the Department's interpretation of the availability of section 212(c) relief in light of *St. Cyr,* the Department also will modify the provisions of § 3.44 as adopted in January 2001 (the Soriano rule) to provide that this rule will govern the adjudication of relief applications filed by aliens who fall within the ambit of the *St. Cyr* decision. This proposed rule provides an important opportunity for LPRs covered by the Court's decision to apply for relief from deportation or removal or otherwise achieve finality in their immigration matters.

*Scope of section 212(c) relief.* This proposed rule is intended to further eliminate the disparity among the courts of appeals on the variety of issues relating to section 212(c) relief. Accordingly, this proposed rule would codify the Supreme Court's holding.

*Conforming changes to the existing regulations.* Because IIRIRA had repealed section 212(c) (which applied to exclusion and deportation proceedings) and substituted different forms of relief for purposes of removal proceedings commenced on or after April 1, 1997, this proposed rule would also make several necessary technical conforming changes in §§ 212.3 and 240.1 of the existing regulations to take account of the circumstances in which aliens would be able to apply for section 212(c) relief with respect to pleas made prior to April 1, 1997, even if they were placed into removal proceedings on or after that date.

The Department notes that former section 242B(e) of the Act, 8 U.S.C. 1252b (1994), barred certain aliens who were ordered deported in absentia from receiving specific forms of discretionary relief for a period of 5 years after the barring act. This statutory provision was repealed by section 308(b)(6) of IIRIRA. The regulatory provision implementing former section 242B(e) is found at 8 CFR 212.3(f)(5). Because section 242B(e) of the Act was repealed by the IIRIRA, § 212.3(f)(5) will be stricken from the regulation.

## Who Is Eligible To Apply for Section 212(c) Relief Pursuant to This Proposed Rule?

An applicant must, at a minimum, meet the following criteria to be considered for a waiver under section 212(c):

• The alien is now an LPR (or was an LPR prior to receiving a final order of deportation or removal);

• The alien is returning to a lawful, unrelinquished domicile of seven consecutive years (or is a former LPR who had established a lawful, unrelinquished domicile of seven consecutive years prior to a final order of deportation or removal);

• The alien is admissible in the discretion of the Attorney General without regard to section 212(a) (other than paragraph (3) (terrorism and security grounds) or paragraph (9)(C) (unlawfully present after previous immigration violations);

• The alien is deportable or removable on a ground that has a

corresponding ground of exclusion or inadmissibility; and

• The alien would have not have been barred from applying for section 212(c) relief with respect to his or her pleas based on the law as it existed at time of the pleas, unless the alien has been charged and found to be removable based on a crime that is an aggravated felony as defined in section 321(a) of IIRIRA, regardless of the date the alien's plea was made.

This proposed rule would not apply to aliens who have departed, and are currently outside the United States; aliens who were subject to a final order of deportation or removal and who have illegally returned to this country; and aliens who are present in the United States without having been admitted or paroled.

Aliens who have been deported or have departed under an order of deportation or removal will not be eligible for relief under the regulation. This policy is consistent with the *Soriano* rule. *See* 66 FR 6436 (Jan. 22, 2001) (codified at 8 CFR 3.44). As a general rule, aliens who have been deported or departed, and for whom the period of time for filing a petition for review of their removal orders in the court of appeals has closed (or if a petition has been filed, it has been denied), may not challenge their prior immigration proceedings. *See* 8 U.S.C. 1231(a)(5); 8 CFR 3.2(d).

The Department's decision to draw a line between those aliens who are in the United States and those aliens who have been deported is reasonable and consistent with the plenary authority of the political branches of the government in the immigration area. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Mathews v. Diaz*, 426 U.S. 67, 80–82 (1976). Aliens whose final orders of removal or deportation have been executed, and for whom the period of time for filing a petition for review of their removal orders in the court of appeals has closed (or if a petition has been filed, it has been denied), are not situated similarly to those aliens who are present in the United States with removal orders because the deportation process for the former class of aliens has been completed. They are barred from reentering the United States for a period of at least five years (except with the permission of the Attorney General), and if they do reenter illegally, the Service may re-execute their prior order. *See* 8 U.S.C. 1231(a)(5). Thus, these aliens stand in a different position from an alien who *is present in the United States. Cf. Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("It is well established that certain constitutional protections

available to persons inside the United States are unavailable to aliens outside of our geographic borders"). Moreover, refusing to allow aliens who have been deported from the United States to obtain relief under the regulation is consistent with Congress's intent as demonstrated by the language in former section 212(c), which makes relief available to aliens "lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and *not under an order of deportation.* * * *" 8 U.S.C. 1182(c) (1994) (emphasis added).

Furthermore, the distinction is reasonable because it is logically related to the orderly administration of this country's immigration laws. Allowing aliens who have been deported to seek relief under the regulation would create certain verification problems relating to the applicant's identity and criminal history. Aliens who were denied 212(c) relief pursuant to AEPDA, and who were deported years ago, may have been convicted of crimes abroad that would disqualify them from relief under the regulation, but which would be difficult, if not impossible, for the INS to discover and verify. Restricting relief to aliens in the United States eliminates this burden. Finally, the Department's distinction is reasonable and fair because aliens who have been deported had a sufficient opportunity to challenge the denial of their applications for 212(c) relief in administrative and judicial proceedings.

## Can All Convictions Entered Prior to April 1, 1997 Be Waived Under This Proposed Rule?

Under this rule, aliens whose pleas were made before April 24, 1996, regardless of when they were entered by the court, will be eligible to apply for section 212(c) relief without regard to the amendments made by AEDPA. Thus, an LPR who has not served an aggregate term of at least five years for aggravated felonies may apply for section 212(c) relief, if otherwise eligible, with respect to any criminal convictions arising from a plea made before April 24, 1996. *See* former INA § 212(c), 8 U.S.C. 1182(c) (1994). Nothing in this proposed rule would affect the applicability of the bar to 212(c) relief for aliens who have served sentences of five years or more for aggravated felonies, regardless of whether the conviction occurred before that bar's enactment in 1990. The Supreme Court in *St. Cyr* addressed only the bars enacted by AEDPA and IIRIRA, not the 1990 amendments. As to the latter, the courts have uniformly held that the bar for aggravated felons

imprisoned for five years or more applies without regard to the date of the conviction. *See, e.g., Scheidemann v. INS*, 83 F.3d 1517, 1523 (3rd Cir. 1996); *Samaniego-Meraz v. INS*, 53 F.3d 254, 256 (9th Cir. 1995); *Asencio v. INS*, 37 F.3d 614, 617 (11th Cir. 1994); *Campos v. INS*, 16 F.3d 118, 122 (6th Cir. 1994); *De Osorio v. INS*, 10 F.3d 1034, 1041 (4th Cir. 1993); *Buitrago-Cuesta v. INS*, 7 F.3d 291, 294 (2nd Cir. 1993); *Barreiro v. INS*, 989 F.2d 62, 64 (1st Cir. 1993); Ignacio v. INS, 955 F.2d 295, 299 (5th Cir. 1992).

Section 440(d) of AEDPA amended section 212(c) of the INA to provide that section 212(c) "shall not apply to an alien who is deportable by reason of having committed any criminal offense covered by [former] section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by [former] section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by [former] section 241(a)(2)(A)(i)." AEDPA § 440(d), as amended by IIRIRA § 306(d).

The effect of section 440(d) of AEDPA was to render an alien ineligible for relief under section 212(c) if he or she was deportable because of convictions for certain criminal offenses, including aggravated felonies, controlled substance offenses, certain firearms offenses, espionage, and multiple crimes of moral turpitude. This narrower version of section 212(c) relief is available to aliens who made pleas on or after April 24, 1996, and before April 1, 1997, regardless of when the plea was entered by the court. Section 212(c) relief is unavailable to aliens who made pleas on or after April 1, 1997, the effective date of IIRIRA, which eliminated this form of relief.

## Which Definition of an "Aggravated Felony" Should Be Used To Determine Eligibility for Section 212(c) Relief?

The definition of an aggravated felony is contained in section 101(a)(43) of the Act. 8 U.S.C. 1101(a)(43). Congress has amended this definition over time, to add additional crimes to the list of aggravated felonies. Thus, some aliens have been convicted of crimes in the past that were not defined as aggravated felonies at the time of conviction, but are now among the listed crimes that are aggravated felonies under current law.

The definition of aggravated felony, as amended by IIRIRA, applies to convictions entered before, on, or after the date of enactment of IIRIRA. *See* INA § 101(a)(43), 8 U.S.C. 1101(a)(43); IIRIRA § 321(b). This definition applies to determine whether an alien is deportable on account of having

committed an aggravated felony. This definition also applies to determine the eligibility for section 212(c) relief in those cases where an alien is deportable as an aggravated felon. *See Matter of Fortiz,* 21 I. & N. Dec. 1199 (BIA 1998). Thus, if an alien pleaded guilty to a crime before the enactment of IIRIRA, and his or her crime became an aggravated felony after the enactment date of IIRIRA, the alien could be charged as an aggravated felon and be ineligible for section 212(c) relief. However, aliens who have not been charged and found deportable as aggravated felons would not be affected by section 321 of IIRIRA.

**How Is 7 Years Lawful, Unrelinquished Domicile in the United States Defined in This Proposed Rule?**

An eligible alien must have lived in the United States as either an LPR, or a lawful temporary resident pursuant to INA section 245A, 8 U.S.C. 1255a, or INA section 210, 8 U.S.C. 1160, for at least seven years, as defined in 8 CFR 212.3(f)(2). For purposes of this rule, an alien begins accruing time as of the date of entry or admission as either a lawful permanent resident or lawful temporary resident and the accrual of time ceases when there is a final administrative order in the alien's case, as outlined in 8 CFR 240.52 and 3.39. Accordingly, if an alien is the subject of a final order of removal, the alien who files a motion for section 212(c) relief pursuant to this proposed rule must have accrued seven years of lawful, unrelinquished domicile as of the date of his or her final administrative order. The Board of Immigration Appeals has long held that lawful domicile ends at the issuance of a final administrative order of deportation or removal. *See Matter of Cerna,* 20 I. & N. Dec. 399 (BIA 1991).

**What Are the Procedures for Filing for Section 212(c) Relief?**

The procedure to follow depends on whether the alien is currently in proceedings. Aliens who are currently in proceedings before an Immigration Judge or the Board of Immigration Appeals must follow different procedures than those aliens who have administratively final orders.

1. *Aliens not currently in proceedings who are seeking a 212(c) waiver prior to temporarily leaving the United States:* This rule does not change the practice, pursuant to 8 CFR 212.3(a)(1), of allowing an alien to apply directly to a district director for section 212(c) relief if he or she qualifies for the waiver.

2. *Aliens in pending deportation or removal proceedings:* An eligible alien who is the subject of a pending

deportation or removal proceeding before an Immigration Judge should file a section 212(c) application pursuant to this rule, or request a reasonable period of time to submit an application pursuant to this rule. If the alien has previously filed an application, he or she may file a supplement to the existing section 212(c) application.

3. *Aliens with an appeal pending before the Board:* An eligible alien who has an appeal pending before the Board should file with the Board a motion for remand to the Immigration Court in order to file a section 212(c) application, or a motion to supplement his or her existing section 212(c) application on the basis of eligibility for such relief pursuant to this rule. If the alien appears to be statutorily eligible for relief under this rule, the Board will remand the case to the Immigration Court for adjudication, unless the Board chooses to exercise its discretionary authority to adjudicate the matter on the merits without a remand.

4. *Aliens under a final order of deportation or removal:* An alien who is the subject of a final order of deportation or removal who is eligible to apply for section 212(c) relief pursuant to this rule must file a "special motion to seek 212(c) relief" with the Immigration Court or the Board, whichever last held jurisdiction, as provided in § 3.44 as added by this rule. The front page of the motion and any envelope containing the motion should include the notation "special motion to seek 212(c) relief." Even if the alien has previously filed a motion to reopen or a motion to reconsider with the Immigration Court or the Board on other grounds, pursuant to 8 CFR 3.23 or 3.2, an eligible alien who is the subject of a final order must file a separate "special motion to seek 212(c) relief" under § 3.44 in order to receive the benefits of this rule.

Any proceeding arising from grant of the special motion under § 3.44 would be limited to issues concerning the alien's eligibility for relief under section 212(c), and may not address the alien's deportability, excludability, removability, or any other basis for relief from deportation or removal unless the Immigration Judge or the Board has reopened the case for other reasons under other applicable provisions of law, in which case the issues may be consolidated for hearing as appropriate and all appropriate motions fees will apply.

If the alien previously filed an application for section 212(c) relief, he or she must file a copy of that application or a copy of a new application and supporting documents

with the motion. If the motion is granted, an alien who previously paid a filing fee and filed a Form I–191 application for section 212(c) relief will not be required to pay a new filing fee.

If the alien has not previously filed an application for section 212(c) relief, the alien must submit a copy of his or her completed application and supporting documents with the motion. If the motion is granted, the alien must then file the application with the appropriate fee pursuant to 8 CFR 103.7.

An alien may file only one "special motion to seek 212(c) relief" for purposes of establishing eligibility under this proposed rule. A motion filed pursuant to this proposed rule either before the Immigration Court or the Board, whichever last had jurisdiction, must specify whether the alien has any pending motions before the Immigration Court or the Board. All "special motions to seek 212(c) relief" filed pursuant to this rule are subject to the restrictions specified in this proposed rule. The usual time and number restrictions on motions, as articulated in 8 CFR 3.2 and 3.23, shall apply to all other motions, but are not applicable to a "special motion to seek 212(c) relief" under this proposed rule.

**Are Aliens Who Were Eligible To Seek Section 212(c) Relief Under the Department's Soriano Rule Eligible To Seek Section 212(c) Relief Under This Rule?**

Eligible aliens who have already filed a motion under the Soriano rule (the current version of § 3.44) would not need to file a motion under this proposed rule because they would have already been provided the opportunity to seek relief. Aliens who did not file a motion under the Soriano rule, if they are otherwise eligible under this proposed rule, would be able to file under this rule.

However, this rule does not allow an alien to relitigate the merits of a prior motion for section 212(c) relief. An alien who has previously been denied section 212(c) relief as a matter of discretion will not be able to get a second opportunity to apply for relief under this rule.

**Is There a Time Limit for Filing a "Special Motion To Seek 212(c) Relief"?**

Yes. An alien must file a "special motion to seek 212(c) relief" 180 days from the effective date of the final rule.

**Is There a Fee for Filing a "Special Motion To Seek 212(c) Relief"?**

There is no fee to file this motion. However, the *usual fees* apply to any other motions filed by the alien.

**Is There a Fee To File a Section 212(c) Application?**

Unless the alien has already filed a section 212(c) application and only needs to update the application, the alien must pay the fee required by 8 CFR 103.7(b)(1) for Form I–191 (currently $170). *See* 8 CFR 103.7. An alien currently in deportation or removal proceedings who did not previously file a section 212(c) application shall submit the Form I–191 to the Immigration Court with the appropriate *fee receipt attached.*

If the case is pending on appeal before the Board, the alien must submit a copy of the section 212(c) application with *the motion to remand. If the motion to* remand to the Immigration Court is granted, the alien must then file the application and the appropriate fee receipt with the Immigration Court at that time.

An eligible alien who is the subject of a final administrative order of deportation or removal is not required to pay a fee at the time of filing the "special motion to seek 212(c) relief." However, if the motion is granted, he or she must file the section 212(c) application with the appropriate fee receipt.

Nothing in this proposed rule would change the requirements and procedures in 8 CFR 3.31(b), 103.7(b)(1), and 240.11(f) for paying the application fee for a section 212(c) application after a motion is granted if such an application was not previously filed. Fees must be submitted to the local office of the Service in accordance with 8 CFR 3.31. An applicant who is eligible for section 212(c) relief and is unable to pay the filing fee may request a fee waiver in accordance with 8 CFR 103.7(c).

**Does the Filing of a "Special Motion To Seek 212(c) Relief" Stay the Execution of a Final Order?**

The mere filing of a motion with the Immigration Court or the Board does not stay the execution of the final order of deportation or removal. To request a stay of the execution of the final order from the Service, the alien must file an Application for Stay of Removal (Form I–246), following the procedures set forth in 8 CFR 241.6. To request that execution of the final order be stayed by the Immigration Courts or the Board, the alien must file a request for a stay with either the Court or the Board. *See* 8 CFR 3.2(f) or 3.23(b)(1)(v).

**What Happens If an Alien Fails To Appear for a Hearing Before an Immigration Judge on a Section 212(c) Application?**

An alien must appear for all scheduled hearings before an Immigration Judge, unless his or her appearance is waived by the Immigration Judge. An alien who is in deportation or removal proceedings before an Immigration Judge, and who fails to appear for a hearing regarding a section 212(c) application, will be subject to the applicable statutory and regulatory in absentia procedures (*i.e.,* former section 242B of the Act as it existed prior to amendment by IIRIRA, 8 U.S.C. 1252b (1994), or section 240(a)(5) of the Act, 8 U.S.C. 1229a(a)(5), and applicable regulations).

**Regulatory Flexibility Act**

The Attorney General, in accordance with the Regulatory Flexibility Act, 5 U.S.C. 605(b), has reviewed this regulation and, by approving it, certifies that this rule will not have a significant economic impact on a substantial number of small entities. This rule would provide a more uniform review process governing the eligibility of certain aliens to apply for 212(c) relief. This rule does not affect small entities as that term is defined in 5 U.S.C. 601(6).

**Unfunded Mandates Reform Act of 1995**

This rule will not result in the expenditure by State, local, and tribal governments, in the aggregate, or by the private sector, of $100 million or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

**Small Business Regulatory Enforcement Fairness Act of 1996**

This rule is not a major rule as defined by section 251 of the Small Business Regulatory Enforcement Act of 1996, 5 U.S.C. 804. This rule will not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, innovation, or on the ability of United States-based companies to compete with foreign-based companies in domestic and export markets.

**Executive Order 12866**

This rule is considered by the Department to be a "significant regulatory action" under Executive Order 12866, section 3(f), Regulatory Planning and Review. Accordingly, this rule has been submitted to the Office of Management and Budget for review.

**Executive Order 13132**

This rule will not have substantial direct effects on the States, on the relationship between the national Government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with section 6 of Executive Order 13132, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

**Executive Order 12988**

This rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988, Civil Justice Reform.

**Plain Language Instructions**

We try to write clearly. If you can suggest how to improve the clarity of these regulations, call or write Charles Adkins-Blanch, General Counsel, Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2400, Falls Church, Virginia 22041, telephone (703) 305–0470.

**Paperwork Reduction Act**

This rule will increase the use of Form I–191 but will not result in a material change in that form, and the INS is adjusting the total burden hours of the form accordingly. Prior to AEDPA and IIRIRA, approximately 4,900 applications for this waiver were considered annually. From the date of the amendments to section 212(c) by AEDPA and IIRIRA, approximately 30,000 LPRs were affected. Some unknown number of the affected LPR's will file either new or amended Form I–191.

**List of Subjects**

*8 CFR Part 3*

Administrative practice and procedure, Aliens, Immigration, Legal services, Organization and functions (Government agencies).

*8 CFR Part 212*

Administrative practice and procedure, Aliens, Immigration, Passports and visas, Reporting and recordkeeping requirements.

*8 CFR Part 240*

Administrative practice and procedure, Aliens, Immigration.

Accordingly, chapter I of title 8 of the Code of Federal Regulations is proposed to be amended as follows:

## PART 3—EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

1. The authority citation for part 3 continues to read as follows:

**Authority:** 5 U.S.C. 301; 8 U.S.C. 1101 note, 1103, 1252 note, 1252b, 1324b, 1362; 28 U.S.C. 509, 510, 1746; sec. 2 Reorg. Plan No. 2 of 1950; 3 CFR, 1949–1953 Comp., p. 1002; section 203 of Pub. L. 105–100, 111 Stat. 2196–200; sections 1506 and 1510 of Pub. L. 106–386, 114 Stat. 1527–29, 1531–32; section 1505 of Pub. L. 106–554, 114 Stat. 2763A–326 to –328.

2. Revise § 3.44 and revise to read as follows:

### § 3.44  Special motion to seek section 212(c) relief for aliens who pleaded guilty or nolo contendere to certain crimes before April 1, 1997.

(a) *Standard for adjudication.* This section applies to certain aliens who formerly were lawful permanent residents, who are subject to an administratively final order of exclusion, deportation or removal, and who are eligible to apply for relief under former section 212(c) of the Act and § 212.3 of this chapter with respect to convictions obtained by plea agreements reached prior to a verdict at trial prior to April 1, 1997. A special motion to seek relief under section 212(c) of the Act will be adjudicated under the standards of this section and § 212.3 of this chapter.

(b) *General eligibility.* Generally, a special motion to seek section 212(c) relief must establish that the alien:

(1) Was a lawful permanent resident and is now subject to a final order of deportation or removal;

(2) Made a plea of guilty or nolo contendere on or before April 1, 1997, to an offense rendering the alien deportable or removable;

(3) Had seven consecutive years of lawful unrelinquished domicile in the United States prior to the date of the final administrative order of deportation or removal; and

(4) Is otherwise eligible to apply for section 212(c) relief under the standards that were in effect at the time the alien's plea was made, regardless of when the plea was entered by the court.

(c) *Aggravated felony definition.* For purposes of eligibility to apply for section 212(c) relief under this section and § 212.3 of this chapter, the definition of aggravated felony in section 101(a)(43) of the Act is that in effect at the time the special motion or the application for section 212(c) relief is adjudicated under this section. An

alien shall be deemed to be ineligible for section 212(c) relief if he or she has been charged and found removable on the basis of a crime that is an aggravated felony. However, an alien whose plea pre-dates April 24, 1996, is ineligible for section 212(c) relief only if he or she has served a term of imprisonment of five years or more for a crime that is an aggravated felony.

(d) *Effect of prior denial of section 212(c) relief.* A motion under this section will be granted with respect to any conviction where an alien has previously been denied section 212(c) relief by an Immigration Judge or by the Board on discretionary grounds.

(e) *Scope of proceedings.* Proceedings shall be reopened under this section solely for the purpose of adjudicating the application for section 212(c) relief, but if the Immigration Judge or the Board grants a motion by the alien to reopen the proceedings on other applicable grounds under §§ 3.2 or 3.23 of this chapter, all issues encompassed within the reopened proceedings may be considered together, as appropriate.

(f) *Procedure for filing a special motion to seek section 212(c) relief.* An eligible alien shall file a special motion to seek section 212(c) relief with the Immigration Court or the Board, whichever last held jurisdiction over the case. An eligible alien must submit a copy of the Form I–191 application, and supporting documents, with the special motion. The motion must contain the notation "special motion to seek 212(c) relief." The Service shall have 45 days from the date of filing of the special motion to respond. In the event the Service does not respond to the motion, the Service retains the right in the proceedings to contest any and all issues raised.

(g) *Relationship to motions to reopen or reconsider on other grounds.* (1) *Other pending motions.* An alien who has previously filed a motion to reopen or reconsider that is still pending before the Immigration Court or the Board, other than a motion for section 212(c) relief, must file a separate special motion to seek section 212(c) relief pursuant to this section. The new motion shall specify any other motions currently pending before the Immigration Court or the Board. Any motion for section 212(c) relief described in this section pending before the Board or the Immigration Courts on the date of publication of the interim rule in the **Federal Register** that would be barred by the time or number limitations on motions shall be deemed to be a motion filed pursuant to this section, and shall not count against the

number restrictions for other motions to reopen.

(2) *Limitations for motions.* The filing of a special motion under this section has no effect on the time and number limitations for motions to reopen or reconsider that may be filed on grounds unrelated to section 212(c).

(h) *Deadline to file a special motion to seek section 212(c) relief under this section.* An alien subject to a final administrative order of deportation or removal must file a special motion to seek section 212(c) relief on or before 180 days from date of publication of the final rule. An eligible alien may file one special motion to seek section 212(c) relief under this section.

(i) *Fees.* No filing fee is required at the time the alien files a special motion to seek section 212(c) relief under this section. However, if the special motion is granted, and the alien has not previously filed an application for section 212(c) relief, the alien will be required to submit the appropriate fee receipt at the time the alien files the Form I–191 with the Immigration Court.

(j) *Remands of appeals.* If the Board has jurisdiction and grants the motion to apply for section 212(c) relief pursuant to this section, it shall remand the case to the Immigration Court solely for adjudication of the section 212(c) application unless the Board chooses to exercise its discretionary authority to adjudicate the matter on the merits without a remand.

(k) *Limitations on eligibility under this section.* This section does not apply to:

(1) Aliens who have departed the United States;

(2) Aliens with a final order of deportation or removal who have illegally returned to the United States; or

(3) Aliens who have not been admitted or paroled.

## PART 212—DOCUMENTARY REQUIREMENTS: NONIMMIGRANTS; WAIVERS; ADMISSION OF CERTAIN INADMISSIBLE ALIENS; PAROLE

3. The authority citation for part 212 continues to read as follows:

**Authority:** 8 U.S.C. 1101, 1102, 1103, 1182, 1184, 1187, 1225, 1226, 1227; 8 CFR part 2.

4. Amend § 212.3 by revising paragraph (a)(2), the second to last sentence of paragraph (d), paragraph (d), the first sentence of paragraph (e)(1), and paragraphs (e)(3), (f)(3), (f)(4), and (g), by removing paragraph (f)(5) to read as follows:

**§ 212.3   Application for the exercise of discretion under section 212(c).**

(a) * * *

(2) The Immigration Court if the application is made in the course of proceedings under section 240 of the Act, or under former sections 235, 236, or 242 of the Act (as it existed prior to April 1, 1997).

(b) * * * All material facts or circumstances that the applicant knows or believes apply to the grounds of excludability, deportability, or inadmissibility must be described in the application. * * *

* * * * *

(d) *Validity.* Once an application is approved, that approval is valid indefinitely. However, the approval covers only those specific grounds of excludability, deportability, or inadmissibility that were described in the application. An applicant who failed to describe any other grounds of excludability, deportability, or inadmissibility, or failed to disclose material facts existing at the time of the approval of the application, remains excludable, deportable, or inadmissible under the previously unidentified grounds. If the applicant is excludable, deportable, or inadmissible based upon any previously unidentified grounds a new application must be filed.

(e) * * *

(1) An eligible alien may renew or submit an application for the exercise of discretion under former section 212(c) of the Act in proceedings before an Immigration Judge under section 240 of the Act, or under former sections 235, 236, or 242 of the Act (as it existed prior to April 1, 1997), and under this chapter. * * *

* * * * *

(3) An alien otherwise entitled to appeal to the Board of Immigration Appeals may appeal the denial by the Immigration Judge of this application in accordance with the provisions of § 3.38 of this chapter.

(f) * * *

* * * * *

(3) The alien is subject to exclusion or inadmissibility from the United States under paragraphs (3)(A), (3)(B), (3)(C), or (3)(E) or (9)(C) of section 212(a) of the Act (8 U.S.C. 1182);

(4) The alien has been convicted of an aggravated felony or felonies, as defined by section 101(a)(43) of the Act, 8 U.S.C. 1101(a)(43). With respect to pleas made prior to April 24, 1996, the alien is ineligible only if he or she has served a term of imprisonment of at least five years for such aggravated felony or felonies.

(g) *Availability of section 212(c) relief for aliens who pleaded guilty or nolo contendere to certain crimes.* For purposes of this chapter, the date of the plea will be considered the date the plea was agreed to by the parties.

(1) *Pleas before April 24, 1996.* Regardless of whether an alien is in exclusion, deportation, or removal proceedings, section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 shall not apply to any pleas made before April 24, 1996.

(2) *Pleas between April 24, 1996 and April 1, 1997.* Regardless of whether an alien is in exclusion, deportation, or removal proceedings, an eligible alien who pleaded guilty or nolo contendere and whose plea was made on or after April 24, 1996, and before April 1, 1997, may apply for relief under section 212(c) of the Act, as amended by section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996.

(3) *Pleas on or after April 1, 1997.* Section 212(c) relief is not available with respect to pleas made on or after April 1, 1997.

**PART 240—PROCEEDINGS TO DETERMINE REMOVABILITY OF ALIENS IN THE UNITED STATES**

5. The authority citation for part 240 continues to read as follows:

**Authority:** 8 U.S.C. 1103; 1182, 1186a, 1224, 1225, 1226, 1227, 1251, 1252 note, 1252a, 1252b, 1362; secs. 202 and 203, Pub. L. 105–100 (111 Stat. 2160, 2193); sec. 902, Pub. L. 105–277 (112 Stat. 2681); 8 CFR part 2.

6. In § 240.1, amend paragraph (a)(1)(ii) by adding at the end '', and former section 212(c) (as it existed prior to April 1, 1997);''.

Dated: August 6, 2002.

**John Ashcroft,**
*Attorney General.*

[FR Doc. 02–20403 Filed 8–12–02; 8:45 am]

**BILLING CODE 4410–30–P**

**SMALL BUSINESS ADMINISTRATION**

**13 CFR Part 121**

**RIN 3245–AE99**

**Small Business Size Standards; Size Standards by 2002 North American Industry Classification System**

**AGENCY:** Small Business Administration (SBA).

**ACTION:** Proposed rule.

**SUMMARY:** The U.S. Small Business Administration (SBA) proposes to amend its Small Business Size Regulations by incorporating the Office of Management and Budget's (OMB) 2002 modifications of the North American Industry Classification System (NAICS) into its table of small business size standards. These modifications are limited to industries in six (6) NAICS Sectors. The modifications result in a small number of size standard changes to certain NAICS activities.

SBA believes that the subject of this proposed rule is noncontroversial and routine, and SBA anticipates no adverse comments to this proposal. Therefore, SBA is publishing concurrently in this issue of the **Federal Register** a direct final rule to achieve the same result, that is, to modify its Small Business Size Regulations as proposed here.

**DATES:** SBA must receive comments to this proposed rule on or before September 12, 2002.

**ADDRESSES:** Address all comments concerning this rule to Gary M. Jackson, Assistant Administrator for Size Standards, Office of Size Standards, 409 3rd Street, SW., Washington, DC 20416, via email to *sizestandards@sba.gov*, or via facsimile, (202) 205–6390. SBA will make all public comments available to any person or concern upon request.

**FOR FURTHER INFORMATION CONTACT:** Carl Jordan, Office of Size Standards, at (202) 205–6618 or *sizestandards@sba.gov*.

**SUPPLEMENTARY INFORMATION:** SBA adopted NAICS industry definitions as a basis for its table of small business size standards effective October 1, 2000. The final rule was published in the **Federal Register** on May 5, 2000 (65 FR 30836) and states the SBA Administrator's determination that the industry descriptions in NAICS shall be the basis for small business size standards.

OMB restructured and modified parts of NAICS effective January 1, 2002. This rule both incorporates the restructuring and modifications into SBA's table of size standards. NAICS 2002 is the same as NAICS 1997 for sixteen of the twenty industry sectors. Construction and wholesale trade are substantially changed. NAICS 2002 also modified a number of retail trade classifications and the organization of the information sector.

13 CFR 121.101(b) states "NAICS is described in the *North American Industry Classification Manual—United States, 1997* * * *." At the time SBA published the final rule in the **Federal Register**, the only description of NAICS available was the NAICS 1997 manual. However, with OMB's 2002 modification of NAICS 1997, SBA believes that retaining a definition in its regulations based on a particular year is confusing and inconsistent with the

2.8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
- Southern District of Texas
ENTERED

MAR 2 6 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| LAURA ESTELLA SALAZAR-REGINO,<br>Plaintiff, | § <br> § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. B-02-45 |
| E.M. TROMINSKI,<br>INS DISTRICT DIRECTOR, ET AL.<br>Defendant. | § <br> § <br> § <br> § | |
| | | |
| TEODULO CANTU-DELGADILLO,<br>Plaintiff, | § <br> § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. B-02-114 |
| E.M. TROMINSKI,<br>INS DISTRICT DIRECTOR, ET AL.<br>Defendant. | § <br> § <br> § <br> § | |
| | | |
| DANIEL CARRIZALOS-PEREZ,<br>Plaintiff, | § <br> § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. B-02-136 |
| AARON CABRERA,<br>INS ACTING DISTRICT DIRECTOR, ET AL.<br>Defendant. | § <br> § <br> § | |
| | | |
| MANUEL SANDOVAL-HERRERA,<br>Plaintiff, | § <br> § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. B-02-138 |
| AARON-CABRERA,<br>INS ACTING DISTRICT DIRECTOR, ET AL.<br>Defendant. | § <br> § <br> § | |

1

EXHIBIT
B

| | | |
|---|---|---|
| RAUL HERNANDEZ-PANTOJA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-197 |
| | § | |
| JOHN ASHCROFT, ATTORNEY GENERAL | § | |
| OF THE UNITED STATES, ET AL. | § | |
| Defendant. | § | |

| | | |
|---|---|---|
| JOSE MARTIN OVIEDO-SIFUENTES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-198 |
| | § | |
| JOHN ASHCROFT, ATTORNEY GENERAL | § | |
| OF THE UNITED STATES, ET AL. | § | |
| Defendant. | § | |

| | | |
|---|---|---|
| CESAR LUCIO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-225 |
| | § | |
| JOHN ASHCROFT, ATTORNEY GENERAL | § | |
| OF THE UNITED STATES, ET AL. | § | |
| Defendant. | § | |

| | | |
|---|---|---|
| PRAXEDIS RODRIGUEZ-CASTRO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-228 |
| | § | |
| JOHN ASHCROFT, ATTORNEY GENERAL | § | |
| OF THE UNITED STATES, ET AL. | § | |
| Defendant. | § | |

2

NOHEMI RANGEL-RIVERA,                §
Plaintiff,                           §
                                     §
v.                                   §          CIVIL ACTION NO. B-03-002
                                     §
JOHN ASHCROFT, ATTORNEY GENERAL      §
OF THE UNITED STATES, ET AL.         §
Defendant.                           §

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

In the interest of judicial economy, all of the above styled causes of action will be

consolidated into one Report and Recommendation thanks to their similar nature.

### BACKGROUND

#### <u>*B-02-045 – Salazar-Regino*</u>

Laura Estella Salazar-Regino has resided in the United States since 1977, when she was

six years old, and has been a lawful permanent resident ("LPR"), since 1981. Her entire family

resides lawfully in the United States, including her LPR husband and four minor United States

citizen children.

On January 7, 1997, Salazar-Regino pleaded guilty to simple possession of marijuana, in

exchange for a grant of deferred adjudication, pursuant to Article 42.12, Section 5(a) of the

Texas Code of Criminal Procedure. The Court accepted the plea bargain, withheld adjudication

of guilt, and placed her on probation for a period of ten years. Salazar-Regino has an excellent

work history, and, apart from the incident leading to the instant proceedings, a clean record.

At the time of her plea, the disposition brought her under the policy exception articulated

in *Matter of Manrique*,[1] which was based on an analogy to the Federal First Offender Act

---

[1] <u>Matter of Manrique</u>, 21 I&N Dec. 58 (BIA 1995).

3

("FFOA").[2] Therefore, at the time of her offense she was not deemed deportable. Furthermore, at that time, simple possession of marijuana was not considered to be an aggravated felony, so even if she had been placed in proceedings, she would have been eligible for cancellation of removal, under 8 U.S.C. Section 1229b(a).[3]

Upon information and belief, Ms. Salazar asserts that a significant number of LPRs who were otherwise similarly situated, in that on or after October 1, 1996, they pleaded guilty to offenses involving simple possession of controlled substances, but whose guilt was adjudicated, and who therefore did not fall within the policy exception of *Matter of Manrique*, were placed in removal proceedings in this judicial district on or after April 1, 1997, and were granted cancellation of removal by the Respondents.

On December 4, 1997, the Fifth Circuit Court of Appeals decided *United States v. Hinojosa-Lopez*,[4] which held, at least for purposes of the Sentencing Guidelines, a state felony for simple drug possession constituted an "aggravated felony." About eight months later, on August 10, 1998, Respondents issued a Notice to Appear, alleging that Salazar-Regino was deportable for having been convicted both of a controlled substance, and of an aggravated felony. At her hearing on January 20, 1999, Salazar-Regino denied that she had been "convicted" of the offense, and denied both charges of deportability. The immigration judge concluded that *Matter*

---

[2] See 18 U.S.C. § 3607.

[3] See Matter of L-G, 21 I&N Dec. 89 (BIA 1995). See also Matter of K-V-D, Interim Decision 3422 (BIA 1999).

[4] United States v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997).

4

*of Manrique* had not been superceded by the new Congressional definition of "conviction,"[5] and terminated proceedings. The INS, however, appealed.

While INS' appeal was pending, there were several significant developments in the law. First, on August 18, 1998, the Board of Immigration Appeals ("BIA") issued *Matter of Punu*,[6] which held that a deferred adjudication disposition constituted a "conviction" for purposes of immigration law. Then, on March 3, 1999, the BIA decided *Matter of Roldan*,[7] which held that *Matter of Manrique* had been superceded by 8 U.S.C. Section 1101(a)(48)(A).[8] Next, on December 10, 1999, the BIA issued *Matter of K-V-D*,[9] which reaffirmed *Matter of L-G*, and held that, notwithstanding *Hinojosa-Lopez*, a state felony conviction for simple possession of a controlled substance would not be construed as an aggravated felony for immigration purposes. Then, on May 11, 2001, the Fifth Circuit decided *United States v. Hernandez-Avalos*,[10] which, in strongly worded dicta, disapproved of *Matter of K-V-D*. Although the pertinent language in *Hernandez-Avalos* appears to be dicta, the Board of Immigration Appeals ("BIA") has followed the case's conclusion, but only for cases arising within this judicial circuit. And finally, on

---

[5] See 8 U.S.C. § 1101(a)(48)(A). The new definition of conviction was enacted on September 30, 1996, with the passing of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA").

[6] Matter of Punu, Interim Decision 3364 (BIA 1998).

[7] Matter of Roldan, Interim Decision 3377 (BIA 1999).

[8] Petitioner notes that Matter of Roldan was disapproved of in Lujan-Armendariz v. INS, on the grounds that it deprives immigrants such as Ms. Salazar of Equal Protection of the laws, since under the FFOA they would not be considered "convicted" if they had received equivalent rehabilitative treatment in federal, rather than state, court.

[9] Matter of K-V-D, supra note 3.

[10] United States v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001).

5

February 8, 2002, the Third Circuit concluded that a state felony conviction for the offense of simple possession of a controlled substance is not an aggravated felony for immigration purposes.[11]

Petitioner alleges that a number of otherwise similarly situated LPRs (LPRs granted deferred adjudication for an offense involving simple possession of a controlled substance), whose cases were heard after *Roldan*, and before *Hernandez-Avalos*, were considered eligible for cancellation of removal, and were granted said relief by Respondents.

On February 14, 2002, the BIA granted the INS' appeal, and in a precedent decision, *Matter of Salazar*,[12] ordered Salazar-Regino's removal on both charges. The BIA declined therein to follow *Lujan-Armendariz* outside of the Ninth Circuit, and held that, in light of *Hernandez-Avalos*, it would not apply *Matter of K-V-D* in the Fifth Circuit. Under this decision, Salazar-Regino is ineligible for any form of relief under the immigration laws, and removal would lead to her being separated from her family.

Under *Matter of Salazar*, otherwise similarly situated LPRs whose cases arose out of the Ninth Circuit are not considered to be subject to removal. LPRs whose cases arose anywhere except the Fifth Circuit continue to be eligible for relief from removal, in the form of cancellation of removal.[13]

### B-02-114 – Cantu-Delgadillo

---

[11] See Germier v. Holmes, 280 F.3d 297, 318 (3d Cir. 2002).

[12] Matter of Salazar, Interim Decision 3462 (BIA 2002).

[13] 8 U.S.C. § 1229b(a).

6

Teodulo Cantu-Delgadillo is a native of Mexico, and has been a lawful permanent resident since July 5, 1978, when he was eight years old. Cantu-Delgadillo is married to a United States citizen and has two United States citizen children. He has absolutely no family in Mexico. On November 27, 1996, Cantu-Delgadillo was granted deferred adjudication for the offense of possession of marijuana. At that time, said disposition did not render him subject to deportation.[14] Although the statutory definition of "conviction" was changed with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) on September 30, 1996, Petitioner argues that most immigration attorneys were unaware that someone like Cantu-Delgadillo could be eligible for deportation. Petitioner argues that the law was in doubt due to the fact that the *Manrique* decision was based on policy considerations, not on the definition of conviction. In fact, Petitioner stated that his criminal defense attorney told him in late 1996 that his deferred adjudication disposition would not effect his immigration status.

Nonehtheless, Cantu-Delgadillo was placed in deportation proceedings, and ordered deported by an immigration judge on February 25, 1997. Cantu-Delgadillo's prior attorney appealed the case to the BIA. By decision dated December 29, 1998, the BIA noted that it had recently held that the deferred adjudication disposition was now considered to be a conviction, under *Matter of Punu*.[15] In the 1998 decision, the Board concluded that Cantu-Delgadillo was ineligible for Section 212(c) relief, due to Section 440(d) of The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). However, the BIA also noted that his marijuana offense would not be considered an "aggravated felony," and that he would therefore be eligible for

---

[14] See *Matter of Manrique*, *supra* note 1.

[15] See *Matter of Punu*, *supra* note 6..

7

cancellation of removal, under 8 U.S.C. Section 1229b(a). Consequently, the Board administratively closed the proceedings, pending promulgation of an anticipated regulation, which allowed the deportation proceedings to be terminated. Removal proceedings initiated so that Cantu-Delgadillo could request cancellation of removal.

However, on March 29, 2001, at the request of the INS, the Board reopened proceedings, and reinstated Cantu-Delgadillo's appeal. On August 31, 2001, the BIA dismissed that appeal, and ordered Cantu-Delgadillo's deportation. The Board's decision was based on the Fifth Circuit's decision in *United States v. Hernandez-Avalos*.[16] There was some confusion as to if and when the Board's decision was sent to counsel for Cantu-Delgadillo. Petitioner first learned of the decision in May 2002, when he was notified that he should be surrendered to INS in Houston for deportation on May 29, 2002. Arrangements were made for Cantu-Delgadillo to surrender in Harlingen, Texas, since he and his counsel are residents of the Rio Grande Valley. Once he had been surrendered, his counsel filed the instant habeas action.

## B-02-136 – Carrizales-Perez

Daniel Carrizales-Perez is a native of Mexico, and entered the United States as a lawful permanent resident on or about December 21, 1983. Carrizales-Perez has resided in the United States continuously since he entered the country. Other than his father, whose whereabouts are unknown, Carrizales-Perez's entire family is lawfully in the United States. Petitioner has a steady history of employment and is currently purchasing the family home.

On or about June 10, 1997, pursuant to a plea bargain, Carrizales-Perez pleaded guilty to the offense of simple possession of marijuana in Brooks County, Texas. Adjudication of guilt

---

[16] United States v. Hernandez-Avalos, supra note 10.

8

was deferred, and he was placed on probation. At that time, this disposition did not render him subject to removal.[17]

Although IIRIRA, which enacted Section 101(a)(48)(A), had converted most deferred adjudications into convictions, *Manrique* was not based on a lack of finality in the criminal proceedings, but rather on an analogy to the Federal First Offender Act (FFOA), which precluded that there was a "conviction" in such cases. Therefore, Petitioner states that no reason existed for Carrizales-Perez to believe that *Manrique* would be abrogated, and that he would be considered "convicted" of the offense. Petitioner argues that even if Carrizales-Perez should have foreseen this change in BIA policy, his disposition still ensured his eligibility for discretionary relief in the form of cancellation of removal.[18]

In resolving his criminal case, Carrizales-Perez relied on the fact that his disposition carried no adverse immigration consequences, and that once he fulfilled the conditions of his probation, the charges would be dismissed. Petitioner claims that if he had known, or even suspected, that his disposition would later be interpreted as causing mandatory deportation with no possibility of relief, or even the possibility of ever returning to the United States legally, he would have fought the charges. INS also understood at that time that this disposition did not render Carrizales-Perez removable, as seen by the fact that removal proceedings were not instituted until after the issuance of *Matter of Roldan*,[19] in which the BIA concluded that the

---

[17] See Matter of Manrique, supra note 1.

[18] See Matter of L-G, supra note 3; Matter of K-V-D, supra note 3.

[19] Matter of Roldan, supra note 7.

policy exception adopted in *Manrique* had been superceded by Section 101(a)(48)(A) of the Act, which redefined "conviction" for immigration purposes.[20]

However, on May 4, 2000, a Notice to Appear was issued for Carrizales-Perez. It alleged, and Petitioner conceded, the above facts relating to nationality and entry. It also alleged that he had been "convicted" of possession of marijuana. Removability was charged under both Section 237(a)(2)(B)(i), for conviction of an offense relating to a controlled substance, and Section 237(a)(2)(A)(iii) for conviction of an aggravated felony, to wit, a drug trafficking offense.

Carrizales-Perez initially contested removability, but was dissuaded by the ruling of the immigration judge that, if there had been no other controlled substance offense, the Court would find that he had not been convicted of an aggravated felony, and that he was eligible for cancellation of removal. As the judge stated at the hearing on December 15, 2000:

> [I]f he's only been convicted of one offense, possession of a controlled substance, the Court will find that's not an aggravated felony....The offense is possession of a controlled substance. If that's the only offense that he had – dealing with a controlled substance – there's no question that the case is not an aggravated felony, and there's no question that he would be eligible for cancellation of removal.[21]

---

[20] <u>Roldan</u> was reversed in the Ninth Circuit by <u>Lujan-Armendariz v. INS</u> and <u>Roldan-Santoya v. INS</u>, 222 F.3d 728 (9th Cir. 2000). The BIA declined to apply that decision nationwide in <u>Matter of Salazar</u>, <u>supra</u> note 12, which is also under review and being addressed in this Report and Recommendation.

[21] Immigration Transcript at 7, 8.

10

INS acknowledged that there was no indication of any other controlled substance violation, and withdrew the aggravated felony charge.[22] The Judge then adjured counsel for Carrizales-Perez to plead to the allegations and the remaining charge, and promised "a date for the filing of the application for relief."[23] Based on these assurances, Petitioner admitted that he had been "convicted" of the marijuana offense, and conceded removability under the controlled substance charge. The immigration court scheduled an appearance to file the application, and June 8, 2001, was the date set for the hearing on the merits of that application. On June 8, 2001, Carrizales-Perez appeared ready to proceed. However, based on the recent decision of the Fifth Circuit in *United States v. Hernandez-Avalos*,[24] the judge allowed INS to "reinstate" the aggravated felony charge and found that it had been sustained. Therefore, the judge found that Carrizales-Perez was ineligible for relief, and ordered his removal from the United States.

In *Hernandez-Avalos*, the Fifth Circuit held that for purposes of the Sentencing Guidelines, whether an offense was a felony (and therefore an aggravated felony), would be determined by whether the person was considered to have been convicted of a felony under state law. The Court also criticized *Matter of K-V-D*, and reaffirmed *Matter of L-G*, under which this question was resolved by analogy to federal law. The criticism of *K-V-D* was very strongly worded dicta.[25]

_____

[22] Immigration Transcript at 8, 9.

[23] Immigration Transcript at 9.

[24] United States v. Hernandez-Avalos, supra note 10.

[25] See Hernandez-Avalos, 251 F.3d at 509. [I]f we were reviewing Hernandez's removal order on direct appeal, and if the issue of statutory interpretation were properly preserved for review, we would hold that the BIA's interpretation of section 924(c) is plainly incorrect and that Hernandez

Moreover, *Hernandez-Avalos* did not, as the immigration judge indicated, hold that all convictions for simple possession of a controlled substance would be treated as felonies. Rather, the decision held that state law would be determinative. The retroactive application of the principles enunciated in *Hernandez-Avalos*, the Petitioner argues, raise reliance issues, similar to those which the Supreme Court characterized in *INS v. St. Cyr*,[26] as creating serious constitutional problems.

Carrizales-Perez filed a timely appeal from the immigration judge's decision, and the appeal was dismissed by the BIA on June 7, 2002. The Board rejected Carrizales-Perez's statutory arguments, and noted that it was without jurisdiction to consider his constitutional claims.

Petitioner asserts that a significant number of long-term LPRs who were otherwise similarly situated, in that on or after October 1, 1996, they pleaded guilty to offenses involving simple possession of a controlled substance, but whose guilt was adjudicated, and who therefore did not fall within the policy exception of *Matter of Manrique* were placed in removal proceedings in this judicial district on or after April 1, 1997, and were granted cancellation of removal by Respondents prior to the issuance of *United States v. Hernandez-Avalos*.

### B-02-138 – Sandoval-Herrera

Manuel Sandoval-Herrera is under an administratively final order of removal, and is a native of Mexico. He entered the United States as an LPR on or about July 25, 1988, and has

---

was an aggravated felon. Id.

[26] INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271 (2001).

12

resided here continuously since that date. Sandoval-Herrera's entire family is lawfully in the United States, and Petitioner has a history of steady employment.

On or about November 7, 1996, Sandoval-Herrera pleaded guilty to the offense of simple possession of cocaine in Cameron County, Texas. The offense was committed on June 22, 1996. He was placed on probation, and at the time, the offense was not considered to be an aggravated felony. Therefore, he was eligible for relief from removal under *Matter of L-G.*[27] In resolving the criminal case, Petitioner contends that he relied on the fact that this disposition permitted him to seek relief from deportation. Had he known, or even suspected, that it would later be interpreted as causing mandatory removal, with no possibility of relief, he asserts that he would have fought the charges.

A Notice to Appear was issued on July 14, 1997. It alleged, and Sandoval-Herrera conceded, the above facts relating to nationality and entry. It also alleged that he had been "convicted" of possession of a controlled substance, to wit, cocaine. Removability was charged under 8 U.S.C. Section 1227(a)(2)(B)(i), for conviction of an offense relating to a controlled substance. Sandoval-Herrera urged that he was not subject to removal, in accordance with *Matter of Manrique*,[28] and, in the alternative, requested an opportunity to seek relief in the form of cancellation of removal, under 8 U.S.C. Section 1229b(a).

While his case was pending before the immigration judge, the Fifth Circuit issued *United States v. Hinojosa-Lopez.*[29] Due to the fact that possession of any amount of cocaine is a felony

_____

[27] *Matter of L-G, supra* note 3.

[28] *See Matter of Manrique, supra* note 1.

[29] *See Hinojosa-Lopez, supra* note 4.

13

in Texas, the immigration judge concluded that *Matter of L-G* was invalid and that Sandoval-Herrera was ineligible for release. Therefore, on January 15, 1999, the judge ordered that he be removed to Mexico. Sandoval-Herrera filed a timely appeal to the BIA. Shortly thereafter, the BIA issued *Matter of K-V-D*,[30] concluding that the term "aggravated felony" could have different meanings within the context of immigration law and the sentencing guidelines, and essentially reaffirmed *Matter of L-G*.[31] Under this decision, Sandoval-Herrera was still eligible for cancellation of removal. However, the Board did not immediately adjudicate his appeal. Rather, it remained pending until April of 2002.

While Sandoval-Herrera's appeal was pending at the BIA, the Fifth Circuit issued *United States v. Hernandez-Avalos*,[32] which reaffirmed *United States v. Hinojosa-Lopez*.[33] The Court also criticized *Matter of K-V-D*, under which the question of whether a crime was to be considered an aggravated felony was resolved by analogy to federal law. The criticism of *K-V-D* was dicta, and Sandoval-Herrera asserts that the retroactive application of *Hernandez-Avalos* raises reliance issues of a constitutional dimension, similar to those characterized in *INS v. St. Cyr*.[34] Nonetheless, the BIA dismissed Sandoval-Herrera's appeal on April 3, 2002, and ordered his removal to Mexico.

---

[30] *See* Matter of K-V-D, *supra* note 9.

[31] *See* Matter of L-G, *supra* note 3.

[32] *See* Hernandez-Avalos, *supra* note 10.

[33] *See* Hinojosa-Lopez, *supra* note 4.

[34] *See* St. Cyr, *supra* note 26.

14

As in the related cases, Petitioner asserts that a significant number of long-term LPRs who were otherwise similarly situated, in that on or after October 1, 1996, they pleaded guilty to offenses involving simple possession of a controlled substance and were placed in removal proceedings in this judicial district on or after April 1, 1997, were granted cancellation of removal by Respondents prior to the issuance of *United States v. Hernandez-Avalos*. Petitioner also maintains that given his lengthy residence in the United States, his strong family ties, steady employment history, and other equities, it is highly likely that he would have earned cancellation of removal had he received the opportunity to apply for said form of relief.

### *B-02-197 – Hernandez-Pantoja*

Raul Hernandez-Pantoja became an LPR of the United States on December 1, 1990. Hernandez-Pantoja has one United States citizen son. On February 11, 1988, Hernandez-Pantoja was given seven years probation, and ordered to pay a $500.00 fine in Harris County after entering a plea of guilty to unauthorized use of a motor vehicle. Almost ten years later, in Nueces County, Hernandez-Pantoja was sentenced to seven years community supervision for possession of marijuana. The INS subsequently initiated removal proceedings and charged Hernandez-Pantoja with being inadmissible and therefore removable from the United States pursuant to 8 U.S.C. Section 1227(a)(2)(B)(i), specifically, an alien who has been convicted of an offense relating to a controlled substance.

On April 10, 2001, an immigration judge found Hernandez-Pantoja removable as alleged in the notice to appear and ineligible for relief from removal. The immigration judge denied Hernandez-Pantoja's application for relief pursuant to 8 U.S.C. Section 1229(b)(3) after he found that Hernandez-Pantoja's conviction for unauthorized use of a motor vehicle was a conviction

15

that qualified as an aggravated felony.[35] The immigration judge never made any findings as to the effect of Hernandez-Pantoja's conviction for possession of marijuana, which was a ground of removability alleged in the notice to appear. Hernandez-Pantoja reserved his right to appeal the decision of the immigration judge, and timely filed a notice of appeal before the BIA.

Hernandez-Pantoja argued before the BIA that his conviction for unauthorized use of a motor vehicle could only be considered an aggravated felony through retroactive application of the amended definition of the term, found at 8 U.S.C. Section 1101(a)(43)(G). He further asserted that BIA precedent decisions clearly established that unauthorized use of a motor vehicle under the Texas Penal Code is not an aggravated felony.

The Immigration Act of 1990, the controlling immigration statute on the date of Hernandez-Pantoja's conviction, does not include unauthorized use of a vehicle as an aggravated felony, and imposes temporal limitations on the definition. Had Hernandez-Pantoja been placed in proceedings any time prior to 1997, his conviction would not have been considered an aggravated felony. Due to the fact that unauthorized use of a vehicle is not considered a crime involving moral turpitude, Hernandez-Pantoja would not have been rendered deportable as a result of his conviction in 1988.[36]

Hernandez-Pantoja urged the BIA to remand his matter to the immigration judge in order to permit him to apply for relief pursuant to 8 U.S.C. Section 1229(b). On June 21, 2002, the BIA dismissed Hernandez-Pantoja's appeal, yet found that his conviction for unauthorized use of a motor vehicle was not an aggravated felony. Nevertheless, the BIA concurred with the result

---

[35] See 8 U.S.C. § 1229(b)(3).

[36] See Matter of M, 2 I&N 686 (BIA 1946).

16

reached by the immigration judge. The BIA concluded that Hernandez-Pantoja was ineligible for relief from removal due to his conviction for possession of marijuana, pursuant to *Matter of Salazar*. Petitioner claims that the BIA decision in his case violates substantive Due Process guarantees of "fair notice," and therefore the BIA's decision should be vacated.

Hernandez-Pantoja argues that the BIA's ruling is fundamentally unfair because when Hernandez-Pantoja applied for Cancellation of Removal, the BIA had not yet held that possession of marijuana was an aggravated felony. The immigration judge erroneously concluded that Hernandez-Pantoja's conviction for unauthorized use of a vehicle was an aggravated felony, which rendered him ineligible for cancellation. Therefore, Petitioner argues, he was denied an opportunity to apply for relief for which he was eligible under the state of the law on the date he requested that relief. By the time the BIA found that unauthorized use of a vehicle was not an aggravated felony, the BIA had already ruled that possession of marijuana was an aggravated felony in *Matter of Salazar*, and the Fifth Circuit had reached its decision in *Hernandez-Avalos*.

### B-02-198 – Oviedo-Sifuentes

Jose Oviedo-Sifuentes is a native and citizen of Mexico. He entered the United States as an LPR on or about November 23, 1994, and has resided in the United States since that date. His father and two minor children are United States citizens, and his mother and seven siblings are all LPRs. He has a history of steady employment, and supports his dependents.

On July 13, 1999, pursuant to a plea bargain, Oviedo-Sifuentes pleaded guilty in Refugio County, Texas, to the offense of simple possession of less than one gram of cocaine, which had been found in the vehicle which he was driving. Adjudication of guilt was deferred and he was

17

placed on probation for two years.[37] Although IIRIRA, which enacted Section 1101(a)(48)(A), essentially removed the element of finality from the definition of conviction; Petitioner argues that *Matter of Manrique* was not based on a lack of finality of the criminal proceedings, but an analogy to the FFOA, which precluded a finding that there was a "conviction" in such cases.

On July 13, 1999, a Notice to Appear was also issued for Oviedo-Sifuentes. It alleged, and Oviedo-Sifuentes conceded, the above facts relating to nationality and entry. It also alleged, and he denied, that he had been "convicted" of possession of cocaine. However, the immigration judge found that all allegations, including the charge, had been established, and ordered Oviedo-Sifuentes' removal to Mexico. Petitioner filed a timely appeal to the BIA.

Oviedo-Sifuentes argued to the BIA that he fell within the policy exception carved out by *Matter of Manrique*,[38] and that proceedings should be terminated, notwithstanding *Matter of Roldan*,[39] wherein the Board concluded that the policy exception adopted in *Manrique* had been superceded by 8 U.S.C. Section 1101(a)(48)(A), which redefined "conviction" for immigration purposes.[40] Said decision was disapproved by the Ninth Circuit in *Lujan-Armendariz v. INS* and *Roldan-Santoyo v. INS*,[41] on the grounds that it deprives residents such as Oviedo-Sifuentes of the Equal Protection of the laws.

---

[37] Deferred adjudication was previously not considered to be a conviction. See Martinez-Montoya v. INS, 904 F.2d 1018 (5th Cir. 1990); see also Matter of Ozkok, 19 I&N Dec. 546 (BIA 1988). Further, under Matter of Manrique, supra note 1, deferred adjudication for the offense of simple possession of a controlled substance was not considered to render one subject to deportation.

[38] See Matter of Manrique, supra note 1.

[39] See Matter of Roldan, supra note 7.

[40] Id.

[41] Lujan-Armendariz v. INS and Roldan-Santoyo v. INS, 222 F.3d 728 (9th Cir. 2000).

18

On December 17, 2001, the presiding judge in Oviedo-Sifuentes' criminal case entered an order which stated the following:

> It is therefore hereby ORDERED, ADJUDGED AND DECREED that this cause be and is hereby DISMISSED, and that Jose M. Oviedo be DISCHARGED from deferred adjudication, and that Jose M. Oviedo is hereby released from all penalties and disabilities resulting from the deferred adjudication in this case.[42]

In *Hernandez-Avalos*,[43] the Fifth Circuit held for purposes of the sentencing guidelines that whether an offense would be considered a felony (and therefore an aggravated felony), would be determined by whether the person was considered to have been convicted of a felony under state law. The Court also criticized *Matter of K-V-D*,[44] and essentially reaffirmed *Matter of L-G*,[45] under which this question was resolved by analogy to federal law. However, the strongly worded criticism of *Matter of K-V-D* in *Hernandez-Avalos* was clearly dicta. Moreover, *Hernandez-Avalos* did not hold that all convictions for simple possession of a controlled substance would be treated as felonies. Rather, the decision held that state law would be determinative. However, under state law, Oviedo-Sifuentes' deferred adjudication does not constitute a conviction. He urges that it contravenes Due Process and Equal Protection to conclude that state law should be followed in determining whether an offense is a felony, and therefore, "illicit trafficking in a controlled substance," (within the meaning of 8 U.S.C. Section

---

[42] See Plaintiff's Exhibit C.

[43] See Hernandez-Avalos, supra note 10.

[44] Matter of K-V-D, supra note 3.

[45] Matter of L-G, supra note 3.

1101(a)(B)) but that state law not be followed in determining whether deferred adjudication constitutes a conviction for immigration purposes.

Nonetheless, Oviedo-Sifuentes' appeal was dismissed by the BIA on September 4, 2002. There is no way to determine whether the Board gave consideration to Oviedo-Sifuentes' arguments on appeal because it simply noted that it was affirming "the results of the decision below."[46]

### *B-02-225 – Lucio*

Petitioner Cesar Lucio is an LPR who has resided continuously in the United States since 1980. He became a lawful temporary resident on September 3, 1987, and an LPR on March 12, 1990. Currently, Petitioner Lucio resides in Rio Hondo, Texas.

On October 16, 1999, Lucio was charged with simple possession of marijuana. He pleaded guilty to the offense on January 3, 2000. His punishment was a fine and ten years of probation. A Notice to Appear was issued on January 3, 2000. It asserted removability under 8 U.S.C. Section 1227(a)(2)(B)(i), for having been convicted of an offense relating to a controlled substance. Lucio conceded removability and sought relief in the form of cancellation of removal, under 8 U.S.C. Section 1229b(a).

On March 7, 2000, an immigration judge in Los Fresnos, Texas, found that Lucio had not been convicted of an aggravated felony and that he was statutorily eligible for cancellation of removal. However, the immigration judge denied relief in the exercise of discretion, largely on the grounds that Mr. Lucio's wife had not yet achieved LPR status.[47] Lucio filed a timely appeal

---

[46] Plaintiff's Exhibit A.

[47] See Plaintiff's Exhibit B.

20

to the BIA. A few weeks later, Lucio's wife became a lawful permanent resident, and his prior counsel advised the Board of that fact in conjunction with his brief on appeal.

The appeal remained pending at the BIA until October 24, 2002, when a single member of the BIA affirmed, without opinion, the "results of the decision below," which therefore became "the final agency determination."[48] Insofar as the Board summarily affirmed the decision of the immigration judge, citing 8 C.F.R. Section 3.1(a)(7), it is impossible to ascertain the exact reasoning of the Board. However, there was a change in the interpretation of the law affecting Lucio's eligibility for such relief between the time of the immigration judge's decision, and the BIA's summary affirmance thereof.[49] Petitioner argues that even if the change in *Hernandez-Avalos* was the basis for the BIA's summary affirmance of the denial of Lucio's application for removal, said disposition was error.

Lucio argues that subsequent amendments to the United States Sentencing Guidelines have shown that the Fifth Circuit erred in its interpretation of 18 U.S.C. Section 924(c) in *Hernandez-Avalos* and that said case is no longer viable either in the immigration or Sentencing Guideline context. The definition of "aggravated felony," applicable herein is 8 U.S.C. Section 1101(a)(43)(B), incorporates the following offenses: "(B) illicit trafficking in a controlled substance (as defined in Section 102 of the Controlled Substances Act [21 U.S.C. Section 802], including a drug trafficking crime (as defined in Section 924(c) of Title 18, United States Code)."[50] Petitioner notes that the basis of this definition is "illicit trafficking in a controlled

---

[48] Plaintiff's Exhibit A.

[49] See Hernandez-Avalos, supra note 10.

[50] 8 U.S.C. § 1101(a)(43)(B).

21

substance." Further, Lucio argues the assertion that a simple possession offense can be a drug "trafficking" crime is not only counterintuitive, but is contradicted by previous BIA precedent. Petitioner cites to the BIA decision in *Matter of Davis*, in which the court observed that "the offense of simple possession would appear to be one example of a drug related offense not amounting to the common definition of 'illicit trafficking.'"[51]

Petitioner further asserts that the plain language, as well as the intent of Section 1101(a)(43)(B) was to cover offenses containing an element related to *trafficking* in drugs, not simple possession.[52] Petitioner cites to *Matter of L-G*[53] and *Matter of K-V-D*[54] for the proposition that the BIA gave effect to the plain meaning, and furthered the important policy of national uniformity of the immigration laws, by construing Section 1101(a)(43)(B) as limited to offenses which would be felonies under federal law. These decisions, argues the Petitioner, had the effect of excluding simple possession offenses of all controlled substances except crack cocaine from falling under the statute.

Lucio further posits that *Hernandez-Avalos* was a sentencing guideline case, and that six months after the Fifth Circuit decision was handed down, the Guidelines were amended to give effect to the plain meaning of the language. Specifically, the Guidelines were changed in order

---

[51] *Matter of Davis*, 20 I&N Dec. 536, 541 (BIA 1990).

[52] See *e.g. Gerbier*, *supra* note 11.

[53] See *Matter of L-G*, *supra* note 3.

[54] See *Matter of K-V-D*, *supra* note 3.

22

to give effect to the plain meaning of the language by making it explicit that a "drug trafficking crime" had to include a trafficking component.[55]

Petitioner notes that a few weeks after the Sentencing Guidelines were amended, the new provision was interpreted by Senior District Judge Justice in *United States v. Sanchez*.[56]  In that case, Judge Justice applied the rule of lenity,[57] and concluded that offenses involving simple possession of a controlled substance were not "aggravated felonies" within the meaning of the amended Sentencing Guidelines.  Judge Justice, in light of the dicta in *Hernandez-Avalos*, postulated that interpreting simple possession offenses as "aggravated felonies" should not be tolerated.

Petitioner contends that there should be more unity between the federal law and immigration laws.  Further, Lucio acknowledges that the essential premise of the pertinent dicta in *Hernandez-Avalos* is that an offense which is considered to be an "aggravated felony" for the purposes of the Sentencing Guidelines should also be an "aggravated felony" for immigration purposes.  However, Lucio argues that the converse should also be true.  18 U.S.C. Section 924(c) relates to the possession and use of firearms during the commission of "drug trafficking" offenses, and crimes of violence.  In that context, Lucio notes, it may make sense to include

---

[55] U.S.S.G. § 2L1.2(b)(1)(C,D), comment.  The definition as adopted on November 1, 2001, reads, in relevant part, as follows: "Drug trafficking offense" means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense." Id.

[56] United States v. Sanchez, 179 F.Supp.2d 689 (W.D. Tex. 2001).

[57] Due to the serious consequences that come about from deportation, particularly in the context of lawful permanent residents, the rule of lenity has also been applied to the construction of deportation statutes. See e.g. INS v. Cardozo-Fonseca, 94 L.Ed2d 434, 459 (1987)(reaffirming "the long standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien").

23

simple possession of drugs since someone who, for example, brandishes a weapon at a police officer who is trying to arrest him or her for "simple possession" should be treated in a like manner as someone who did the same during the sale of a small quantity of drugs to an undercover agent. However, Lucio debates the Sentencing Commission exercised a degree of common sense with respect to the importation of this definition into the immigration context, and specifically excluded offenses (which by definition are not committed with the aid of a firearm) from the definition of "drug trafficking" crimes for purposes of 8 U.S.C. Section 1326.

Consequently, Lucio asserts, the new definition of simple possession, as defined by the Sentencing Guidelines, should be applied to immigration cases as well. Petitioner argues that the injustice of a contrary interpretation is apparent not only in cases such as the one at bar, where an LPR accepted a plea of bargain at a time when such a disposition did not bar his eligibility for cancellation of removal, but also in instances where an LPR is convicted of simple possession of small amounts of cocaine. In Texas, simple possession of any "visible and measurable" amount of cocaine, no matter how trivial, is a felony.[58]

Petitioner further reasons if the dicta in *Hernandez-Avalos* were to be given effect, LPRs such as Lucio would be considered ineligible for any form of relief from deportation, no matter their equities, because their offenses are "aggravated felonies." But, if they returned unlawfully after deportation, the same offenses would not be considered "aggravated felonies" for purposes of sentencing for unlawful re-entry under 8 U.S.C. Section 1326.

_____

[58] See TEX. HEALTH & SAFETY CODE §§ 481.102(3)(D) and 481.115(d). See also Kemp v. State, 861 S.W.2d 44 (Tex. App.– Houston [14th Dist.] 1993) (ruling that "specks" of white powder in a bag weighing .5 milligrams was sufficient to sustain a conviction).

Petitioner also claims that serious constitutional violations are evident in this case. Specifically, Lucio argues that there is a violation of the Equal Protection Clause,[59] the constitutional right to procedural Due Process,[60] and substantive Due Process[61] in that his case involves an overbroad statute which interferes with protected family interests by means of a "conclusive presumption" that no non-citizen, regardless of his family ties and the minimal nature of his offense, is worthy of remaining in the United States.

Lucio cites *INS v. St. Cyr*[62] and *Zavydas v. Davis*[63] as cases which stand for the proposition that serious constitutional doubts should mitigate in favor of finding a statutory

_____

[59] In the Ninth Circuit, deferred adjudication is not considered to be a conviction, and such persons would not even be subject to removal. See Lujan-Armendariz v. INS, supra note 39. In both the Second and Third Circuits, a conviction for simple possession of a controlled substance is not considered to be an aggravated felony. See Aguirre v. INS, 79 F.3d 142 (2d Cir. 1999); Gerbier v. Holmes, supra note 11.

[60] Although Petitioner acknowledges that deportation is a civil, rather than a criminal penalty; Petitioner points out that even in the context of civil cases, there are certain protections against the retroactive application of unexpected punishment. See e.g. BMW v. Gore, 517 U.S. 559, 574 (1996), in which the Supreme Court ruled "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." Id.

[61] Petitioner relies on cases such as Zavydas v. Davis, 533 U.S. 678 (2001); Hoang v. Comfort, 282 F.3d 1247 (10th Cir. 2002), Kim v. Ziglar, 276 F.3d 523 (9th Cir. 2002), and Patel v. Zemski, 275 F.3d 299 (3d Cir. 2001) as cases which applied retroactivity and substantive due process principles in other contexts relating to immigrants. See also Matter of Salazar-Regino, 23 I&N Dec. 223, 238 (BIA 2002) (Rosenberg, L., dissenting); Landon v. Plasencia, 459 U.S. 21, 34 (1982) (citing Bridges v. Wixon, 326 U.S. 135, 154 (1945) for the proposition that the right to rejoin immediate family ranks high among the interests of an individual); Moore v. City of East Cleveland, 431 U.S. 494, 499 (1977); and Stanley v. Illinois, 405 U.S. 645, 651 (1972). Moore and Stanley are fundamental rights cases involving family relationships. Stanley struck down a conclusive presumption and Moore simply concluded that the interest advanced by the state was insufficient to justify the particular intrusion into the family unit. As an LPR, Lucio correctly asserts that he enjoys the same substantive Due Process rights as citizens to develop and enjoy intimate family relationships in the United States.

[62] INS v. St. Cyr, supra note 26.

[63] Zavydas, supra note 61.

25

interpretation which would avoid reaching the constitutional concerns, even if one is required to "stretch" the statutory language in order to do so. Lucio further asserts, however, that such a statutory interpretation is clear in this case; as is the means of distinguishing *Hernandez-Avalos*. Petitioner reiterates that a BIA decision in 1990,[64] and amendments to the Sentencing Guidelines in 2001,[65] have found that simple possession of a controlled substance is not a drug trafficking crime for the purposes of 18 U.S.C. Section 924(c). Therefore, Lucio reasons, simple possession of a controlled substance should not be considered a drug trafficking crime under 8 U.S.C. Section 1101(a)(43)(B).

### *B-02-228 – Rodriguez-Castro*

Praxedis Rodriguez-Castro has resided in the United States, and has been an LPR since 1956, when he was five years old. His entire family resides lawfully in the United States, including his wife and five United States citizen children. He has an excellent work history, and numerous other equities.

In 1984, Rodriguez-Castro was convicted of simple possession of marijuana, and in 1999, he was convicted of simple possession of between one and four grams of cocaine. On January 27, 2000, a Notice to Appear was issued and he was placed in removal proceedings based on the cocaine conviction.

At the time of his cocaine conviction, Petitioner's eligibility for cancellation of removal, under 8 U.S.C. Section 1229b(a), depended on whether the second offense would have been

---

[64] Matter of Davis, supra note 51.

[65] See supra note 55.

considered a felony under federal law.[66] Rodriguez-Castro argued before an immigration judge that, had the offense been prosecuted in federal court, it would have been treated as a misdemeanor. There was no trafficking involved, the marijuana conviction had occurred more than fifteen years previously, and he had few other "criminal history" points. Therefore, the sentence he would have received would have been less than one year. He also demonstrated that under similar circumstances, involving two convictions, the BIA had held that the person was eligible for relief.

On information and belief, Rodriguez-Castro asserts that a significant number of long-term LPRs who were otherwise similarly situated, in that on or after October 1, 1996, they were convicted of offenses involving simple possession of controlled substances, were granted cancellation of removal by Respondents. However, while Rodriguez-Castro's case was pending, there were significant developments in the law. On May 11, 2001, the Fifth Circuit decided *United States v. Hernandez-Avalos*,[67] which in strongly worded dicta disapproved of *Matter of K–V–D*. Although the pertinent language in *Hernandez-Avalos* was dicta, the Board has followed its conclusion, but only for cases arising within the Fifth Circuit. In a related case, on February 8, 2002, the Third Circuit concluded in *Germier v. Holmes*,[68] that, absent a trafficking element, a felony conviction for the offense of possession of a controlled substance is not an aggravated felony for immigration purposes.

---

[66] See Matter of L-G, supra note 3.

[67] See Hernandez-Avalos, supra note 10.

[68] See Gerbier, supra note 11.

27

On the basis of *Hernandez-Avalos*, the immigration judge ordered Rodriguez-Castro's removal on October 19, 2001.[69]  A timely appeal was filed, raising a number of statutory and constitutional issues.  However, in November 2002, the BIA affirmed, without opinion, "the results of the decision below," rendering it "the final agency decision," under 8 C.F.R. Section 3.1(e)(4).  Petitioner asserts that the failure of the BIA to address the issues raised by Rodriguez-Castro on appeal denied him Due Process in that there was no meaningful review.

### B-03-002 – Rangel-Rivera

Nohemi Rangel-Rivera has resided in the United States since 1984, when she was approximately fourteen years old.  Rangel-Rivera has been an LPR since 1985, and her entire family resides in the United States (including her three minor United States citizen children).  She has an excellent work history, and, apart from the incident leading to the instant proceedings, a clean record.

On March 9, 1999, pursuant to a previously negotiated plea bargain, Rangel pleaded no contest to simple possession of marijuana in exchange for a grant of deferred adjudication, pursuant to Article 42.12, Section 5(a) of the Texas Code of Criminal Procedure.[70]

Petitioner asserts that at the time of her arrest, simple possession of marijuana was not considered to be an aggravated felony, and that even if she were deportable, she would have been eligible for cancellation of removal under Section 1229b(a).[71]  However, on March 17, 1999,

---

[69] Plaintiff's Exhibit B.

[70] TEX. CRIM. PROC. CODE art. 42.12, § 5(a).

[71] See Matter of L-G, supra note 3.  See also Matter of K-V-D, supra note 3.

Respondents issued a Notice to Appear, alleging that Rangel-Rivera was deportable for having been convicted of an offense relating to a controlled substance.

Petitioner claims that she relied on *Matter of L-G* in conceding deportability. Rangel-Rivera requested cancellation of removal, which was granted by Immigration Judge Howard Achtsam on May 11, 1999. INS appealed the decision to the BIA. While the appeal was pending, there were several significant developments in the law. Although she was not aware of it until much later, on March 3, 1999, the BIA decided *Matter of Roldan*,[72] which held that *Matter of Manrique* had been superceded by 8 U.S.C. Section 1101(a)(48)(A).[73] Next, on December 10, 1999, the BIA issued *Matter of K-V-D*,[74] which reaffirmed *Matter of L-G*, and held that, notwithstanding *Hinojosa-Lopez*, a state felony conviction for simple possession of a controlled substance would not be construed as an aggravated felony for immigration purposes. Then, on May 11, 2001, the Fifth Circuit decided *United States v. Hernandez-Avalos*,[75] which, in strongly worded dicta, disapproved of *Matter of K-V-D*. Although the pertinent language in *Hernandez-Avalos* appears to be dicta, the Board of Immigration Appeals ("BIA") has followed the case's conclusion, but only for cases arising within this judicial circuit. And on February 14, 2002, the BIA issued *Matter of Salazar*[76] which, in light of *Hernandez-Avalos*, declined to follow Ninth Circuit precedent outside of the Ninth Circuit. Essentially, the Board ruled that it would not

---

[72] Matter of Roldan, supra note 7.

[73] See supra note 8.

[74] Matter of K-V-D, supra note 3.

[75] United States v. Hernandez-Avalos, supra note 10.

[76] Matter of Salazar, supra note 12.

29

apply *Matter of K-V-D* in the Fifth Circuit. Under the Board's decision in *Matter of Salazar*, Rangel-Rivera is ineligible for any form of statutory relief, and if she is removed, will permanently be separated from her family in the United States.

INS' appeal remained pending at the BIA until December 19, 2002, when the BIA granted INS' appeal on the grounds that under the subsequent case law described above, Rangel-Rivera was no longer statutorily eligible for relief. On information and belief, Petitioner maintains that a number of otherwise similarly situated LPRs, (i.e. LPRs granted deferred adjudication for an offense involving simple possession of a controlled substance) that had cases which were fully adjudicated before *Hernandez-Avalos*, were granted statutory relief by Respondents.

Petitioner Rangel-Rivera points out that otherwise similarly situated LPRs whose cases arose in the Ninth Circuit are not considered subject to removal, and those whose cases arose in the Second or Third Circuits continue to be eligible for relief from removal, in the form of cancellation of removal under 8 U.S.C. Section 1229b(a).[77]

Petitioner argues that her lengthy residence in the United States, which commenced at an early age, along with her strong family ties, employment history, and otherwise clean record combine to make her a strong candidate for relief. She further states that when Immigration Judge Achtsam grants relief, he is virtually never reversed on appeal. Therefore, Rangel-Rivera speculates, due to the length of time INS' appeal was pending, it is highly likely that had the BIA adjudicated INS' appeal on the merits it would have been dismissed, and the proceedings would have been terminated.

---

[77] See Gerbier, supra note 11. See also United States v. Pornes-Garcia, 171 F.3d 142 (2d Cir. 1999).

30

## ALLEGATIONS

The following allegations have been made by at least one of the above-mentioned

Petitioners:

1)    <u>STATUTORY CONSTRUCTION</u>

      (a)    <u>Aggravated Felony</u> – Petitioners argue that the Board erred as a

matter of law in its conclusion that *United States v. Hernandez-*

*Avalos* controls the resolution of the question of whether a deferred

adjudication disposition constitutes an aggravated felony.

Petitioners further assert that the language in the *Hernandez-Avalos*

decision that disapproved of *Matter of K-V-D* was clearly dicta.  To

the contrary, Petitioners assert that the BIA correctly decided

*Matter of K-V-D* and that it erred in not applying that case to the

Petitioners herein.

      (b)    *Matter of Roldan* – Petitioners urge that, as a question of law,

*Matter of Roldan* was incorrectly decided.  Further, Petitioners

assert that (new) 8 U.S.C. Section 1101(a)(48)(A) was not intended

to, and did not, legislatively overrule *Matter of Manrique*.

2)    <u>EQUAL PROTECTION</u>

      (a)    <u>Federal First Offender Act</u> – Petitioners assert, for the reasons set

forth in the Ninth Circuit opinion of *Lujan-Armendariz*, that it

violates Equal Protection for a determination of whether a given

disposition of criminal charges for simple possession of a

31

controlled substance renders an immigrant subject to deportation to
be based solely on whether the immigrant was processed in state or
federal court.

(b)    Differing Results in Different Jurisdictions – Petitioners assert,
given the national character of immigration law, that it violates
Equal Protection for the results of their cases to depend solely on
the federal jurisdiction in which it arose.  For example, Petitioner
Salazar-Regino notes that had she been placed in removal
proceedings within the Ninth, rather than the Fifth Circuit, she
would not be subject to removal at all.  Additionally, she notes that
had she been placed in such proceedings in any other jurisdiction
other than the Fifth, she would have qualified for cancellation of
removal.  Said form of relief, Petitioners assert, would have been
earned in the exercise of discretion.

(c)    Differing Results Based on Timing of the Proceedings – Petitioners
assert that had their cases been heard between March 3, 1999, and
May 11, 2001 (after the BIA issued *Matter of Roldan* and before
the Fifth Circuit decided *Hernandez-Avalos*), they would have been
subject to removal, but eligible for cancellation of removal, and
would have most probably earned such relief in the exercise of
discretion.  Petitioners argue that it violates Equal Protection for
the difference between remaining in the United States as an LPR,

32

and being removed, and thus permanently barred from returning

lawfully, to be based solely on the timing of the proceedings.

### 3)     SUBSTANTIVE DUE PROCESS

As permanent residents, Petitioners assert that they have a fundamental

liberty interest in being able to live and work in the United States, and in

remaining here with their families.[78]  Petitioners assert that the

combination of provisions enacted by IIRIRA,[79] together with the repeal of

Section 212(c) of the Act, and its replacement with 8 U.S.C Section

1229b(a), which contains an absolute prohibition on granting discretionary

relief to anyone convicted of an "aggravated felony," and the overly

expansive definition of what constitutes such "aggravated felonies,"

represents an unconstitutional "conclusive presumption."  In other words,

the definition conclusively presumes that all LPRs who have been

convicted of any offense in the list are unworthy of being able to stay with

their families in the United States, even where the State has deemed it

appropriate to grant rehabilitative treatment to a first time offender.

Similarly, Petitioners argue that by failing to permit any showing of

countervailing equities, these provisions are unjustifiable, as they are not

sufficiently narrowly tailored to meet a compelling state interest.

### 4)     PROCEDURAL DUE PROCESS

---

[78] See supra note 61.

[79] 8 U.S.C. § 1101(a)(48)(A).

33

Petitioners also assert that the decision of the Board in their cases deprive them of Procedural Due Process, as seen by another series of Supreme Court cases involving "fair notice." To apply *Matter of Roldan* and *United States v. Hernandez-Avalos* to the Petitioners retroactively, Petitioners argue, converts a disposition which, at the time of the adjudication of guilt, carried little to no immigration consequences, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, Petitioners correctly point out that deportation has long been recognized as a "penalty."[80] Deportation then becomes an additional penalty, according to Petitioners, when it is retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof.

5)    <u>INTERNATIONAL LAW AND TREATY OBLIGATIONS</u>

Petitioners argue that the their deportation orders violate international law, and treaty obligations between the United States and Mexico, but do not specifically point to any international laws or treaties.

Respondents have filed motions in all of the above-styled cases claiming that the district court does not have jurisdiction to hear these cases. Specifically, Respondents claim that the

---

[80] <u>See</u> <u>Reno v. American-Arab Anti-Discrimination Committee</u>, 525 U.S. 471, 497-98 (1999) (quoting <u>Bridges v. Wixon</u>, 326 U.S. 135, 154 (1945)). Justice Ginsberg, concurring in Part I and the result wrote the following: "As this Court has long recognized, '[t]hat deportation is a penalty – at times a most serious one – can not be doubted.'" <u>Id.</u>

34

Petitioners may not challenge removability in habeas corpus because the court of appeals must first address the issues raised in their petitions for review.

## ANALYSIS

Dealing first with the Respondent's jurisdictional motion, this Court finds that the district court is not precluded from hearing the petitions in this case. This Court retains habeas jurisdiction under Section 2241 after AEDPA. Although Respondents have taken issue with said type of action in light of 8 U.S.C. Section 1252(a)(2)(C), no post-*St. Cyr* case in any circuit holds that habeas review of constitutional claims was impermissible because such claims could have been, but were not raised on direct review (in the circuit court). Petitioners must raise substantial constitutional issues in order for this Court to exercise jurisdiction.[81] In these cases, all of Petitioners, at the very least, have raised substantial constitutional issues in their habeas petitions, and this Court will consider said petitions on the merits.

As to Petitioners' substantive claims for relief, this Court reserves judgment on Claims One through Three as well as Claim Five. However, the Court notes that Supreme Court and Fifth Circuit precedence seemingly has foreclosed all of these claims. This Court will only address Claim Four, which is one in which they are entitled to relief.

Specifically, this Court finds that Petitioners are entitled to relief because they did not receive fair and proper notice. In other words, Petitioners were unaware that their past acts would be penalized in the present, thus, their procedural Due Process rights were violated by the

---

[81] See Balogun v. Ashcroft, 270 F.3d 274, 278 n. 11 (5th Cir. 2001). See also Nehme v. INS, 252 F.3d 415, 420 (5th Cir. 2001); Lara-Ruiz v. INS, 241 F.3d 934, 939 (7th Cir. 2001).

Board's actions in their cases. All named Petitioners should have their cases remanded to the BIA, and should be given the opportunity to apply for cancellation of removal.

The Board's past decisions have deprived the Petitioners of procedural Due Process as seen by Supreme Court cases involving "fair notice." To apply *Hernandez-Avalos* to these Petitioners retroactively essentially converts a disposition which, at the time they entered into pleas, carried little to no immigration consequences into one that mandates deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty."[82]

Deportation thus becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed administrative and judicial interpretations thereof. This occurs, even though for about half of the Petitioners[83] under state law there is no conviction, and never will be one, if they successfully complete deferred adjudication. However, even though the other half received probation,[84] they also did not receive "fair notice," due to the fact that relief was still available to them in the form of cancellation of removal when their convictions were entered.

---

[82] See <u>Reno</u>, 471 U.S. at 497-98.

[83] Petitioners Salazar-Regino, Cantu-Delgadillo, Oviedo-Sifuentes, and Rangel-Rivera received deferred adjudication.

[84] Petitioners Sandoval-Herrera, Carrizales-Perez, Hernandez-Pantoja, Lucio, and Rodriguez-Castro received probation.

36

Petitioners mandatory deportation is unlawful because it retroactively makes qualitative changes in the penalty imposed in a wholly unexpected manner.[85]  As espoused by the Second Circuit in *Arce v. Walker*:[86] "the Due Process Clause protects against restraints or conditions of confinement that 'exceed[] the sentence in ... an unexpected manner.'"[87] Due Process protections exist even though deportation is a civil penalty in which criminal punishment is not involved.  As the Supreme Court has held in *BMW of North America v. Gore*, "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty a State may impose."[88]

The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against judgments without notice afforded by the Due Process Clause is implicated by civil penalties.  In these cases, for lawful permanent residents, there can be no question that deportation is a civil penalty imposed as a result of their criminal convictions for simple possession of narcotics.  It therefore violates Due Process to deport these Petitioners

---

[85] See Nancy Morawetz, Rethinking Retroactive Deportation Laws and the Due Process Clause, 73 NYU Law Rev. 97 (1998).

[86] Arce v. Walker, 139 F.3d 329 (2d Cir. 1998).

[87] See id. at 333-34 (quoting Sandlin v. Conner, 515 U.S. 472, 484 (1995)).  See also Sandlin, 515 U.S. at 479 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences").  See e.g. Vitek v. Jones, 445 U.S. 480, 493 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); Washington v. Harper, 494 U.S. 210, 221-22 (1990) (ruling that an inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

[88] See Gore, 517 U.S. at 574 n. 22.

due to a retroactive application of a new construction of a statute[89] because it imposes a severe civil penalty without prior notice.[90]  As stated in *BMW of North America v. Gore*, it confounds the "elementary notions of fairness enshrined in [the Supreme Court's] constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose."[91]

Simple possession of controlled substances appears to now be treated *uniformly* as an aggravated felony for immigration purposes in the Fifth Circuit.[92]  In other words, if any of the above-named Petitioners would have pleaded guilty after the Fifth Circuit's decision in *Hernandez-Avalos*, there is little or no doubt that they would be deemed guilty of an aggravated felony and thus be subject to removal with no form of relief available.  However, as some of the Petitioners testified, at the time of their dispositions, the law regarding possession of controlled substances and whether they were to be considered aggravated felonies was very much in doubt. In fact, it is hard for this Court to believe that each one of the named Petitioners would have pleaded guilty to their simple possession charges if they knew that mandatory deportation would commence thereafter, especially given their extensive family and employment ties to the United States.  There was obviously a great deal of confusion amongst the criminal bar as to whether

---

[89] See Bouie v. City of Columbia, 378 U.S. 347, 358 (1964).  The *Bouie* Court ruled if a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be applied retroactively. Id.

[90] See Shaffer v. Heitner, 433 U.S. 186, 217 (1977).

[91] See Gore, supra note 60 at 574.

[92] See Hernandez-Avalos, supra note 10 (holding that state law would be determinative as to the question of whether an offense would be treated as felony, and thus an aggravated felony).

*Matter of K-V-D* or *Hinojosa-Lopez* was controlling in the immigration context on the question of whether felony (simple) possession of controlled substances constituted an aggravated felony for immigration purposes.  Counsel for the Service claims that the Petitioners were on fair notice by the mere fact that they were here as a gratuity, in that "they don't have a right to be here" and it is "a privilege for them to live in the United States."[93]  Therefore, they are on notice, reasons the Service, when the United States entitles them to live here, in that "they need to comply with the laws."[94]  However, even the INS was unsure about the state of the law prior to *Hernandez-Avalos*, as evidenced by the Service's admission that various immigration judge's were applying the principles of IIRIRA in different ways.[95]  The Service itself continued operating in many jurisdictions the exact same way it had prior to the passage of IIRIRA, and did not consider simple possession as an offense that led to mandatory deportation.

The implications of this Report and Recommendations are limited, in that it only affects legal permanent residents, in this judicial circuit, convicted of simple possession charges before the Fifth Circuit's decision in *Hernandez-Avalos* and after IIRIRA took effect.  This Court finds that this is the only logical solution to the problem confronting these Petitioners and the INS, especially considering the tumultuousness state of the law at the time Petitioners were found guilty of simple possession.  The attorney for the Petitioners proffered to the Court that most if not all of her clients had not been informed prior to their plea that there would be immigration

---

[93] See Evidentiary Hearing Transcript at 132.

[94] Id.

[95] See Evidentiary Hearing Transcript at 140.

consequences.[96] It is a violation of an LPR's procedural due process rights for the INS to come back years later, when the law is on more solid ground, and remove these individuals. Before *Hernandez-Avalos*, legal permanent residents similar to those applying for a writ of habeas corpus in this case were at least given the opportunity to apply for cancellation of removal even though they were convicted of offenses which led to possible deportation. In fact, as counsel for both sides pointed out, prior to *Hernandez-Avalos*, immigration judges, in their own discretion, regularly granted cancellation of removal in cases similar to the ones at bar.

**RECOMMENDATION**

This Court recommends that these Petitioners be entitled to reopen their cases in the BIA, in accordance with the final order of the district judge in this case. This Court recommends granting the writs based on a procedural due process violation, in that these Petitioners were not given "fair notice" that they would face mandatory deportation with no possibility of relief when they entered their guilty pleas to simple possession of controlled substances years ago.

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[96] See Evidentiary Hearing Transcript at 112. Further, criminal defense attorneys are not considered "ineffective" if they fail to disclose that deportation is a possible consequence of their guilty plea. See United States v. Banda, 1 F.3d 354, 355 (5th Cir. 1993).

40

a failure to object.[97]

DONE at Brownsville, Texas this ___26___ day of March, 2003.


Felix Recio
United States Magistrate Judge

---

[97] See Douglass v. United States Automobile Association, 79 F.3d 1415, 1417 (5th Cir. 1996).

41