23

United States District Court
Southern District of Texas
ENTERED

SEP 0 9 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JAIME PEQUENO-MARTINEZ | § | |
| | § | |
| VS. | § | CIVIL NO. B-02-214 |
| | § | |
| E. M. TROMINSKI, INS DISTRICT DIRECTOR | § | |
| and JOHN ASHCROFT, ATTORNEY GENERAL | § | |
| OF THE UNITED STATES | § | |

| | | |
|---|---|---|
| OSWALDO CALDERON-TERRAZAS | § | |
| | § | |
| VS. | § | CIVIL NO. B-02-145 |
| | § | |
| AARON CABRERA, ACTING DIRECTOR, | § | |
| HLG/DO, THE IMMIGRATION & | § | |
| NATURALIZATION SERVICE, and | § | |
| JOHN ASHCROFT, UNITED STATES | § | |
| ATTORNEY GENERAL | § | |

| | | |
|---|---|---|
| EUGENIO REYNA-MONTOYA | § | |
| | § | |
| VS. | § | |
| | § | |
| AARON CABRERA, ACTING DIRECTOR, | § | CIVIL NO. B-02-144 |
| HLG/DO, THE IMMIGRATION & | § | |
| NATURALIZATION SERVICE, and | § | |
| JOHN ASHCROFT, UNITED STATES | § | |
| ATTORNEY GENERAL | § | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Three former lawful permanent residents (LPRs) filed petitions seeking writs of

habeas corpus from this court after receiving final orders of removal from the Board of

Immigration Appeals (BIA). Each has raised statutory and constitutional challenges to the BIA's

conclusions that each alien is removable based on a prior conviction and that each alien is

ineligible for discretionary cancellation of removal based on the alien's status as an aggravated

felon.  In Part II of this opinion, the facts are set out in pertinent part.  In Part III, this court sets

out the standard it has followed to review each petition.

   In Part IV, this court holds that it has jurisdiction over these habeas petitions

notwithstanding the Department of Homeland Security's argument that habeas review is

precluded.  The Department of Homeland Security (DHS) argues that this court lacks habeas

jurisdiction because all of the petitioners' claims can be heard on direct review in the court of

appeals.  However, this claim is contrary to the thrust of *INS v. St. Cyr*, 533 U.S. 289 (2001), the

Fifth Circuit implicitly rejected it in *Flores-Garza v. INS*, 328 F.3d 797 (5th Cir. 2003), several

appellate courts in other circuits have explicitly rejected it, and this court finds the DHS's

reliance on a series of pre-*St. Cyr* transitional rules cases from this circuit unpersuasive on this

point.

   In Part V, this court holds that Oswaldo Calderon-Terrazas's statutory and

constitutional claims are meritless.  Specifically, 1) the BIA properly affirmed the immigration

judge's determination that Calderon-Terrazas was convicted of an aggravated felony based on his

state court order of deferred adjudication for sexual assault of a minor; 2) Calderon-Terrazas is

not entitled to be eligible for discretionary cancellation of removal as a matter of substantive or

procedural due process; 3) the phrase "sexual abuse of a minor" is not unconstitutionally vague;

and 4) the BIA's use of its new summary affirmance procedures did not violate due process.

   Next, in Parts VI and VII this court holds that Jaime Pequeno-Martinez and

2

Eugenio Reyna-Montoya's habeas petitions will be stayed pending resolution of the multiple

petitions consolidated under the name of *Salazar-Regino v. Trominski*, Case No. B-02-045, S.D.

Tex., Brownsville Division.  Most of Reyna-Montoya and Pequeno-Martinez's claims are the

same as those raised in *Salazar-Regino*.  Pequeno-Martinez has withdrawn his separate claims,

and this court hereby denies Reyna-Montoya's separate claims.  Specifically, this court holds that

Reyna-Montoya remains convicted for immigration purposes notwithstanding his modified state

court order purporting to withdraw his underlying guilty plea *nunc pro tunc.*

## II.    FACTS AND PROCEEDINGS

The habeas petitions in each of these cases are largely identical, as are the briefs

from both sides.  Likewise, these cases present largely the same issues as the *Salazar-Regino*

cases.[1]  This court will present the common issues just once, using Pequeno-Martinez's case as an

illustration of the changes in the immigration laws that gave rise to all of these cases.

### A.    Pequeno-Martinez

Pequeno-Martinez, a citizen of Mexico and former lawful permanent resident

(LPR) of this country, pled guilty in December 1996 in Texas state court to possession of

marijuana in an amount greater than five but less than fifty pounds, a felony of the third degree.

Pequeno-Martinez received deferred adjudication and four years of community supervision.  *See*

Texas Code of Crim. Pro. art. 42.12, § 5 (authorizing judge to "defer further proceedings without

_____

[1]        *Salazar-Regino* and the cases consolidated therewith have been ruled upon by
Magistrate Judge Felix Recio and are currently awaiting a ruling on that report and
recommendation by Judge Hilda Tagle in the Brownsville Division of the Southern District of
Texas.

entering an adjudication of guilt" following defendant's plea of guilty or *nolo contendere*, "and place the defendant on community supervision"). On the basis of this deferred adjudication, the DHS[2] charged Pequeno-Martinez in October 1997 with removability as an alien convicted of a controlled substance offense per 8 U.S.C. § 1227(a)(2)(B)(i), and as an alien convicted of an aggravated felony per 8 U.S.C. § 1227(a)(2)(A)(iii).

In June 1998, the immigration judge terminated removal proceedings against Pequeno-Martinez. [Administrative R. at 101] The judge agreed that Pequeno-Martinez was removable as an alien convicted of a controlled substance offense, but disagreed that this conviction amounted to an aggravated felony because it was only for drug possession, not drug trafficking. [*Id.* at 104] The judge further held that Pequeno-Martinez was entitled to relief from his controlled substance conviction under the first-time offender exception established by *Matter of Manrique*, 21 I. & N. Dec. 58 (BIA 1995).[3] [Administrative R. at 105]

The INS appealed, and the BIA reversed the immigration judge by written opinion

---

[2]    The Department of Homeland Security (DHS) encompasses the service formerly known as the Immigration and Naturalization Service (INS).

[3]    In *Matter of Manrique*, the BIA extended the policy of leniency towards first-time drug offenders provided by the Federal First Offender Act (FFOA), 18 U.S.C. § 3607(a) (1988), to aliens who had been accorded rehabilitative treatment under a state statute. *See* 21 I. & N. Dec. 58, 64; *see also Lujan-Armendariz v. INS*, 222 F.3d 728, 738 (9th Cir. 2000). The FFOA "allows the court to sentence the defendant in a manner that prevents him from suffering any disability imposed by law on account of the finding of guilt." *Lujan-Armendariz*, 222 F.3d at 738. In particular, the act provides that "[a] disposition under [the act] . . . shall not be considered a conviction . . . for any . . . purpose." 18 U.S.C. § 3607(b). Accordingly, *Matter of Manrique* provided that aliens would not be deported for first-time possession offenses if they were accorded relief under a state rehabilitative statute and could demonstrate that they would have been eligible for relief under the FFOA. The immigration judge in Pequeno-Martinez's case found that these criteria had been satisfied and terminated removal proceedings.

on July 18, 2002. [*Id.* at 60-61] This reversal was based on two changes in the BIA's

interpretation of the immigration laws that occurred after the immigration judge issued his

opinion in 1998.

First, the BIA ruled in *Matter of Roldan-Santoyo*, 22 I. & N. Dec. 512 (BIA

1999), that the holding in *Matter of Manrique* had been superseded by the statutory definition of

"conviction" at 8 U.S.C. § 1101(a)(48)(A). This definition was added to the Immigration and

Nationality Act (INA) in 1996 by § 322 of the Illegal Immigration Reform and Immigrant

Responsibility Act (IIRIRA), and provides as follows:

> (48)(A) The term "conviction" means, with respect to an alien, a formal judgment
> of guilt of the alien entered by a court or, if adjudication of guilt has been
> withheld, where--
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of
> guilty or nolo contendere or has admitted sufficient facts to warrant a finding of
> guilt, and
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the
> alien's liberty to be imposed.

Examining the statute's text and legislative history, the BIA reasoned that Congress "intends that

the determination of whether an alien is convicted for immigration purposes be fixed at the time

of the original determination of guilt, coupled with the imposition of some punishment." *Matter*

*of Roldan*, 22 I. & N. Dec. 512. Accordingly, *Matter of Roldan* held that "an alien is considered

convicted for immigration purposes upon the initial satisfaction of the requirements of section

101(a)(48)(A) of the Act, and that he remains convicted notwithstanding a subsequent state

action purporting to erase all evidence of the original determination of guilt through a

rehabilitative statute." *Id.*; *see also Moosa v. INS*, 171 F.3d 994, 997, 1005-06 (5th Cir. 1999)

(holding that alien who completed term of supervision pursuant to Texas deferred adjudication

statute remained "convicted" for immigration purposes under 1101(a)(48)(A)). Relying on *Matter of Roldan*, the BIA held that Pequeno-Martinez had been convicted of a controlled substance offense and that relief under *Matter of Manrique* was no longer available. [Administrative R. at 61]

Second, in *Matter of Salazar-Regino*, 23 I. & N. Dec. 223, n.5 and accompanying text (BIA 2002), the BIA agreed with the Fifth Circuit that simple possession offenses arising in this Circuit were "drug trafficking crimes" and therefore aggravated felonies so long as the offense was a felony under state law, even if it would only be a misdemeanor under federal law.[4] Prior to this decision, the BIA had reached the opposite conclusion, holding that simple possession convictions were not aggravated felonies unless they were punishable *as felonies*

---

[4]    The BIA relied on the Fifth Circuit's decisions in *United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001), and *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997), to reach this conclusion. As recently reiterated in *United States v. Caicedo-Cuero*, 312 F.3d 697 (5th Cir. 2002), a state felony conviction for simple possession of a controlled substance is an aggravated felony by virtue of the following analysis. 8 U.S.C. § 1101(a)(43) provides that an "aggravated felony" includes any "drug trafficking crime" under 18 U.S.C. § 924(c); 18 U.S.C. § 924(c)(2) defines a "drug trafficking crime" as "any felony punishable under the Controlled Substances Act"; and, finally, possession of a controlled substance is punishable under the Controlled Substances Act (CSA). *See Caicedo-Cuero*, 312 F.3d at 706-07 (5th Cir. 2002) (citing *Hinojosa-Lopez*, 130 F.3d at 693-94). The court in *Hinojosa-Lopez* rejected the argument that the offense must be punishable *as a felony* under the Controlled Substances Act; rather, the definition of "drug trafficking crime" in 18 U.S.C. § 924(c)(2) encompasses two separate elements: 1) that the offense be punishable under the CSA, and 2) that the offense be a felony. 130 F.3d at 694 (citation omitted). Thus, as long as the offense is a felony under state law and punishable under the CSA, it is a "drug trafficking crime" under 18 U.S.C. § 942(c)(2), even if it is only punishable as a misdemeanor under federal law. *Id.*; *see also Caicedo-Cuero*, 312 F.3d at 707 n.64.

under the Controlled Substances Act.[5] Relying on *Salazar-Regino*, the BIA held that Pequeno-

Martinez's conviction constituted an aggravated felony. [Administrative R. at 61]  The

immigration judge's order was vacated and Pequeno-Martinez was ordered deported to Mexico.

[*Id.*]  Pequeno-Martinez did not have an opportunity to apply for cancellation of removal.  *See* 8

U.S.C. § 1229b(a)(3) (providing that the attorney general may not cancel removal for an LPR

convicted of an aggravated felony).

        Pequeno-Martinez filed a petition for review in the Fifth Circuit on August 15,

2002.  He moved to voluntarily dismiss this petition in October 2002, however, and his motion

was summarily granted.  He filed a petition for writ of habeas corpus in this court in November

2002, arguing that he is being held in custody pending removal in violation of federal statutory

---

[5]      The BIA had previously accepted the argument rejected in *Hinojosa-Lopez, see supra* n.4, and held that the relevant language in 18 U.S.C. § 924(c)(2) meant that a drug offense must be punishable *as a felony* under the Controlled Substances Act to be an aggravated felony under 8 U.S.C. § 1101(a)(43).  *See Matter of L-G-*, 21 I. & N. Dec. 89, 96 (BIA 1995).  In fact, the Board explicitly rejected *Hinojosa-Lopez*'s resolution of this issue in a 1999 decision, *Matter of K-V-D-*, 22 I. & N. Dec. 1163 (BIA 1999), reasoning that the relevant language of 18 U.S.C. § 924(c)(2) should be interpreted differently in the immigration context than in the Sentencing Guidelines context.  (*Hinojosa-Lopez* is a Guidelines case.)

      In 2001, the Fifth Circuit strongly disagreed with *Matter of K-V-D-*, reasoning that "the statutory language is clear — and is the same — whether applied in sentencing or immigration cases."  *Hernandez-Avalos*, 251 F.3d at 510 (stating in *dicta* that "if we were reviewing Hernandez's removal order on direct appeal . . . we would hold that the BIA's interpretation of section 924(c) is plainly incorrect and that Hernandez was an aggravated felon").  In 2002 the BIA accepted *Hernandez-Avalos* as binding precedent for all cases before the board arising from the Fifth Circuit.  *See In re Salazar-Regino*, 23 I. & N. Dec. 223, n.5 and accompanying text (BIA 2002).  Finally, later that year the BIA reconsidered its approach to this issue nationwide and overruled *Matter of K-V-D-*, holding instead that it would 1) apply the law of the circuit in determining whether a state felony conviction constitutes an aggravated felony without regard to any independent legal standard developed by the board; and 2) apply the majority rule (i.e., the *Hinojosa-Lopez* rule) in cases arising in circuits whose courts of appeals had not reached the issue.  *In re Yanez-Garcia*, 23 I. & N. Dec. 390, 396-98 (BIA 2002).

and constitutional law. *See* 28 U.S.C. § 2241(c)(3).

Pequeno-Martinez argues that the BIA incorrectly interpreted the meaning of the terms "conviction" and "aggravated felony" in *Roldan-Santoyo* and *Salazar-Regino*, respectively. Next, Pequeno-Martinez asserts several equal protection violations, including an argument that this court should adopt the reasoning of the Ninth Circuit in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000). The court in *Lujan-Armendariz* held that because 8 U.S.C. § 1101(a)(48)(A) did not partially repeal the FFOA either by express terms or by implication, *id.* at 743, aliens who would have been eligible for relief under the FFOA remain entitled to relief under state rehabilitative statutes notwithstanding the new definition of "conviction." *Id.* at 749. The court reasoned that there is "no rational basis for [treating] persons adjudged guilty of a drug offense under state law more harshly than persons adjudged guilty of the identical offense under federal law." *Id.* at 749 (citations omitted). Pequeno-Martinez argues that because he would have been eligible for FFOA relief had he been prosecuted in federal court, he is entitled to relief from the immigration consequences of his deferred adjudication.

Pequeno-Martinez next argues that the combined effect of these changes in the immigration laws — to wit, the new definition of conviction, the elimination of § 212(c) relief for aggravated felons, and the expanded definition of that term — creates an "unjustifiable conclusive presumption" that an LPR who pleads guilty to simple possession of marijuana and receives an order of deferred adjudication should be summarily removed notwithstanding a long history of gainful employment in this country, no other criminal history, the presence of the alien's entire family in this country, or any other equitable considerations. Pequeno-Martinez

8

argues that this presumption violates his fundamental substantive due process right to remain in this country with his family because it is not narrowly tailored to achieve any compelling state interest. Pequeno-Martinez also argues that his procedural due process right to "fair notice" of the consequences of his guilty plea was violated when the BIA adopted *Hernandez-Avalos*'s conclusion that a state felony conviction for simple possession constitutes an aggravated felony, rendering him ineligible for cancellation of removal. Pequeno-Martinez argues that such a drastic consequence "could not have been contemplated at the time of [his] guilty plea."

Finally, Pequeno-Martinez originally asserted that, under *INS v. St. Cyr*, 533 U.S. 289 (2001), he was entitled to seek discretionary relief from removal under former INA § 212(c) notwithstanding IIRIRA's repeal of that provision in 1996.[6] Likewise, in August 2002 he moved the BIA to reconsider its final order of removal based on both *St. Cyr* as well as proposed regulations published that month which are intended to establish procedures for LPRs who qualify for relief under *St. Cyr*. *See* 67 Fed. Reg. 52627, 52628 (Aug. 13, 2002). Following the BIA's denial of this motion in March 2003, Pequeno-Martinez filed an unopposed motion to supplement his habeas petition to include claims based on this denial of relief. At oral argument before this court, however, counsel for Pequeno-Martinez conceded that he is not entitled to relief under the doctrine of *St. Cyr*, presumably because he would not have been eligible for § 212(c) relief at the time of his guilty plea in December 1996. [4/29/03 Hearing at pp. 39, 112-13]

---

[6]     The Court in *St. Cyr* held that because Congress did not plainly express its intent to apply the repeal of § 212 (c) retroactively, *see* 533 U.S. at 317-20, § 212(c) relief remained available to aliens whose convictions were obtained through plea agreements and who would have been eligible for § 212(c) relief at the time of their plea agreements notwithstanding their convictions. *Id.* at 326.

9

**B.    Eugenio Reyna-Montoya**

Eugenio Reyna-Montoya, a citizen of Mexico and a former LPR, pled guilty in November 2001 in Texas state court to possession of marijuana, a felony of the third degree. Reyna-Montoya's adjudication was deferred, and he was placed on probation for a period of three years. Later that month the INS charged Reyna-Montoya with removability as an alien convicted of a controlled substance offense and an aggravated felony. In January 2002, the immigration judge held that Reyna-Montoya was removable on both grounds and further held that Reyna-Montoya was ineligible for discretionary cancellation of removal because of the aggravated felony conviction. *See* 8 U.S.C. § 1229b(a)(3). Reyna-Montoya appealed, and in July 2002, the BIA affirmed the immigration judge's order without opinion per 8 C.F.R. § 1003.1(a)(7) (2003) (permitting affirmance without opinion by a single member of the Board where "the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation"). Reyna-Montoya then filed this habeas petition on July 25, 2002. *See* 28 U.S.C. § 2241(c). Reyna-Montoya's petition presents all of the arguments contained in Pequeno-Martinez's petition, except that Reyna-Montoya has never argued that he comes within the *St. Cyr* rule precluding retroactive application of IIRIRA's repeal of § 212(c).

In December 2002, Reyna-Montoya obtained a modification of his judgment of deferred adjudication. The new order provides that:

> the plea of guilt and deferred adjudication previously entered in this Court on November 1st 2001 . . . be modified to indicate that the Court's order of deferred adjudication is not based on any guilty plea. This Court's previous orders remain constant and in full effect, yet the acceptance of the guilty plea has been

> withdrawn as if it had never been entered.  The entry of judgment as modified is
> ordered *nunc pro tunc*."

[Notice of Filing Ex. C in Support of Pet. for Writ of Habeas Corpus; emphasis added]  Reyna-

Montoya moved to reopen his appeal to the BIA on the basis of this order, but the BIA ruled that

Reyna-Montoya's motion was untimely and also declined to re-open proceedings on its own

motion.  Consequently, in addition to the arguments detailed above, Reyna-Montoya now argues

that he is no longer subject to removal because his guilty plea has been withdrawn *nunc pro tunc*,

and moves this court for summary judgment on this ground.

### C.    Oswaldo Calderon-Terrazas

Finally, Oswaldo Calderon-Terrazas, also a citizen of Mexico and formerly an

LPR, pled guilty in Texas state court in December 2000 to two counts of "sexual assault of a

child" in violation of Texas Penal Code § 22.11, a felony of the second degree. [Resp't Return

and Mot. to Dismiss Pet. for Writ of Habeas Corpus, Ex. A] In January 2001 adjudication of

Calderon-Terrazas's case was deferred and he was placed on community supervision for six

years.  The INS initiated removal proceedings, and the immigration judge agreed with the INS

that Calderon-Terrazas was removable because he had been convicted of "sexual abuse of a

minor," an aggravated felony.  *See* 8 U.S.C. § 1101(a)(43)(A); 8 U.S.C. § 1227(a)(2)(A)(iii).

The judge further held that Calderon-Terrazas was ineligible for cancellation of removal.  *See* 8

U.S.C. § 1229b(a)(3).  The BIA affirmed the immigration judge's order without opinion in June

2002, and Calderon-Terrazas filed this habeas petition on July 25, 2002.  Calderon-Terrazas's

petition raises the same issues as those raised by the other two petitioners, as well as several

independent statutory and constitutional claims.

11

### III.    STANDARD OF REVIEW

In considering these habeas petitions, this court reviews the BIA's rulings of law *de novo*, except that this court will defer to the BIA's reasonable interpretation of ambiguous provisions of the INA. *Lopez De Jesus v. I.N.S.*, 312 F.3d 155, 158 (5th Cir. 2002). This court also reviews questions of constitutional law *de novo*. *Soadjede v. Ashcroft*, 324 F.3d 830, 831 (5th Cir. 2003). Because these petitioners allege only pure errors of law, this court does not have need to review any of the BIA's factual findings; if it did, however, they would be reviewed under the more deferential substantial evidence standard. *Lopez De Jesus*, 312 F.3d at 158. Finally, this court will consider the immigration judge's decisions in these cases only to the extent they bear on those of the BIA. *Id.*

### IV.    THIS COURT HAS HABEAS JURISDICTION OVER PETITIONERS' STATUTORY AND CONSTITUTIONAL CHALLENGES TO THEIR FINAL REMOVAL ORDERS

The DHS argues that this court lacks subject matter jurisdiction to hear these petitioners' claims under 28 U.S.C. § 2241(c) because 1) habeas review of removal orders is only available where there is no other forum for judicial review, and 2) the court of appeals has jurisdiction to determine all of the petitioners' statutory and constitutional claims. The DHS makes this latter claim notwithstanding the explicit jurisdiction-stripping provision at 8 U.S.C. § 1252(a)(2)(C), which precludes judicial review of final orders of removal against aliens convicted of controlled substance offenses or aggravated felonies.[7] The DHS concludes that this

---

[7]    8 U.S.C. § 1252(a)(2)(C) provides, in pertinent part, that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable" for committing certain enumerated offenses, including

court should either dismiss the petitioners' habeas petitions for lack of jurisdiction or transfer them to the Fifth Circuit Court of Appeals under 28 U.S.C. § 1631, which authorizes a federal court lacking jurisdiction over a case to transfer that case to another court that would have had jurisdiction at the time the case was filed. *See Batista v. Ashcroft*, 270 F.3d 8, 11-12 (1st Cir. 2001) (noting that district court transferred habeas petition challenging reinstatement of removal order to court of appeals pursuant to 28 U.S.C. § 1631).

The DHS's argument that this court lacks habeas jurisdiction is at odds with the thrust of *St. Cyr* and *Calcano-Martinez v. INS*, 533 U.S. 348 (2001), which is that "jurisdiction over constitutional issues and statutory issues is withdrawn from the courts of appeals and that the place to resolve such issues is in the district courts through habeas corpus." *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1069 (9th Cir. 2003) (citing *St. Cyr* and *Calcano-Martinez*); *see also Bosede v. Ashcroft*, 309 F.3d 441, 446 (7th Cir. 2002) (stating that post-*Calcano-Martinez* and *St. Cyr*, petitioners subject to final orders of removal may only raise jurisdiction-related claims in petitions for review to the courts of appeals, and that any other statutory or constitutional challenges may only be raised through habeas corpus petitions to the district courts under 28 U.S.C. § 2241) (citing *Calcano-Martinez*, 533 U.S. at 351). Indeed, the DHS's recent attempts to avoid the thrust of *St. Cyr* and *Calcano* have been implicitly rejected by the Fifth Circuit and explicitly rejected by the Second, Third, and Ninth Circuits, as explained below. Accordingly, this court concludes that it has jurisdiction over these habeas petitions pursuant to 28 U.S.C. § 2441(c)(3).

---

aggravated felonies and controlled substance offenses.

First, the DHS's argument that habeas jurisdiction depends on the absence of an alternative forum conflicts with *St. Cyr*. The Court in *St. Cyr* held that "habeas jurisdiction under § 2241 was not repealed by AEDPA and IIRIRA." 533 U.S. at 314. The Court reached this conclusion for two reasons: 1) Congress did not clearly state its intent to repeal habeas jurisdiction; and 2) without habeas review, there would be no review of final removal orders in any federal court, contrary to the "strong presumption of judicial review of administrative action." *Id.* at 298-314. The DHS implicitly argues here that if the second reason does not apply, then the first reason is insufficient. Two circuit courts of appeals have rejected similar arguments, holding that habeas jurisdiction exists even if the alien has an alternate forum for review because *St. Cyr*'s first rationale is independently sufficient as a matter of statutory construction. *See Liu v. INS*, 293 F.3d 36, 40 (2d Cir. 2002); (holding that non-criminal aliens could bring habeas petitions even though they could also appeal directly to the federal courts of appeals); *Chmakov v. Blackman*, 266 F.3d 210, 213-16 (3d Cir. 2001) (same); *but cf. Seale v. INS*, 323 F.3d 150, 152-54 (1st Cir. 2003) (noting ambiguous language in *St. Cyr* and concluding that "[t]he question remains open whether the existence of another available judicial forum to adjudicate the merits of an alien's claim overrides the absence of a clear statement by Congress that it intended to strip the district courts of their habeas jurisdiction").

Furthermore, the Fifth Circuit implicitly rejected a similar argument in *Flores-Garza v. INS*, 328 F.3d 797 (5th Cir. 2003). In that case, the government argued, as it does here, that the Fifth Circuit had jurisdiction to review all of Flores-Garza's statutory and constitutional challenges, and therefore the court of appeals should hold that the district court lacked habeas

14

jurisdiction over those same claims. *Id.* at 801. The Fifth Circuit declined the government's invitation to link the two jurisdictional inquires. Instead, the court first decided that it lacked jurisdiction under IIRIRA's jurisdiction-stripping provision, 8 U.S.C. § 1252(a)(2)(C), 328 F.3d at 801-03, and then separately considered whether the district court properly dismissed Flores's habeas petition for lack of jurisdiction, noting that this second jurisdictional inquiry "is another matter altogether." *Id.* at 803. The court reversed the lower court's dismissal in light of *St. Cyr*, noting simply that "in *St. Cyr*, the Supreme Court expressly held that § 1252's jurisdiction-stripping provisions do not deprive the federal courts of jurisdiction to entertain a petition for a writ of habeas corpus." *Id.* Thus, the Fifth Circuit implied that even in a case where it had jurisdiction over claims arising from a final order of removal via a petition for review, the district court would still have jurisdiction over those same claims via a petition for habeas corpus.

The DHS relies on a series of pre-*St. Cyr* Fifth Circuit cases for the proposition that habeas jurisdiction exists only where "challenges cannot be considered on direct review by the court of appeals." *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 305 (5th Cir. 1999); *see also Rivera-Sanchez v. INS*, 198 F.3d. 545, 547-48 (5th Cir. 2000) (quoting *Requena-Rodriguez* for this proposition); *Santos v. Reno*, 228 F.3d 591, 597 (5th Cir. 2000) (same). These cases were decided under IIRIRA's transitional rules, whereas the cases before this court are governed by IIRIRA's permanent rules.[8] However, the statutory source of *Requena*'s rule, 8 U.S.C. §

---

[8]     IIRIRA's "transitional rules" apply only to deportation or exclusion proceedings that began before April 1, 1997 (IIRIRA's effective date), and ended more than thirty days after IIRIRA's passage on September 30, 1996. *See Requena-Rodriguez*, 190 F.3d at 302-03 (citing, *inter alia*, IIRIRA § 309(c)(1), (4), 110 Stat. 3009-625, -626)). Since the removal proceedings in these cases began after April 1, 1997, all of these cases are governed by IIRIRA's permanent

1105a(c), persists in IIRIRA's permanent rules as 8 U.S.C. § 1252(d)(2).[9]  This court was unable

to locate any published opinion holding that § 1252(d)(2) applies to habeas petitions.  However,

its predecessor clearly did.  *Santos*, 228 F.3d at 596.  Furthermore, every circuit court that has

considered whether § 1252(d)(1) applies in habeas cases has held that it does,[10] and there is no

basis to hold otherwise with respect to subsection (d)(2).  Nonetheless, this court concludes that

*Requena*'s rule, which has not been cited since *St. Cyr* was decided, is not applicable to these

petitioners.

Section 1252(d)(2), like section 1105a(c), provides that no court may consider an

issue that has already been or could have been raised in a "prior proceeding."  However, neither

section indicates that the first proceeding, and therefore the "prior proceeding" for purposes of

these statutes, must be a petition for review in the court of appeals.  That element was added with

---

rules.

[9]     Transitional rule cases are governed by INA § 106(c).  *See Santos*, 228 F.3d at
596.  INA § 106(c) provides, in pertinent part, that "[n]o petition for review or for habeas corpus
shall be entertained if the validity of the order has been previously determined in any civil or
criminal proceeding, unless the petition presents grounds which the court finds could not have
been presented in such prior proceeding."  *See* 8 U.S.C. § 1105a(c) (1995).
        Even though INA § 106(c) was repealed by IIRIRA § 306(b), functionally
identical language can be found in IIRIRA's permanent rules at 8 U.S.C. § 1252(d), which
provides that "[a] court may review a final order of removal only if . . . (2) another court has not
decided the validity of the order, unless the reviewing court finds that the petition presents
grounds that could not have been presented in the prior judicial proceeding."

[10]    Although the Fifth Circuit has not yet reached the issue, at least four courts of
appeals have held that § 1252(d)(1), which provides that "[a] court may review a final order only
if (1) the alien has exhausted all administrative remedies available to the alien as of right," is
applicable to habeas review in district courts.  *Sundar v. I.N.S.* 328 F.3d 1320, 1325 (11th Cir.
2003); *Theodoropoulos v. I.N.S.* 313 F.3d 732, 736-37 (2d Cir. 2002); *Kurfees v. INS*, 275 F.3d
332, 336-37 (4th Cir. 2001); *Singh v. Reno*, 182 F.3d 504, 511 (7th Cir. 1999).

16

little explanation by *Requena*, 190 F.3d at 305, and subsequently cited without explanation in *Santos* and *Rivera*. Presumably it derives from the Fifth Circuit's inquiry into the purpose of former § 1105a in *United States ex. rel. Marcello v. District Director of the INS*, 634 F.2d 964 (5th Cir. 1981), which is cited in *Requena. See* 190 F.3d at 306. In *Marcello* the court noted that Congress enacted § 1105a to streamline the judicial review of deportation orders by making the courts of appeals "the 'sole' organs of review" for such orders. 634 F.2d at 967. That court reasoned that section 1105a provided for some habeas review to avoid Suspension Clause problems, *id.*, but stated that there was "little room for doubt that Congress attempted to severely limit the availability of habeas review. The basic pattern of review is meant to be by petition to the appellate court, not by resort to habeas in the district court." *Id.* at 969. Thus, the court in *Requena* could read § 1105a(c) not only to ensure that an alien had just one bite at the apple, but also to require the alien to take as much as possible of that first bite in the court of appeals.

It is doubtful whether the second part of this rule survives *St. Cyr.* For the reasons discussed above, *Cedano-Viera*, *Bosede*, *Liu*, *Chmakov*, and *Flores-Garza* all hold or imply that habeas jurisdiction over removal orders does not depend on the absence of jurisdiction in the court of appeals. Furthermore, even if *Requena's* rule remains a reasonable interpretation of § 1252(d)(2) for aliens who are *not* precluded from presenting their claims to the court of appeals by § 1252(a)(2)'s jurisdiction-stripping provisions, it makes no sense as applied to these three petitioners, all of whom are precluded by § 1252(a)(2)(C). The DHS places great reliance on the Fifth Circuit's oft-stated position that despite § 1252(a)(2)(C), the court still "has jurisdiction to review jurisdictional facts and determine the proper scope of its own jurisdiction." *Flores-*

17

*Garza*, 328 F.3d at 802 (citation omitted). Thus, the court of appeals retains jurisdiction to determine whether § 1252(a)(2)(C)'s jurisdictional bar properly applies. In exercising this jurisdiction it would certainly have to consider at least some of these petitioners' challenges to the BIA's decisions. Nevertheless, as the Second Circuit noted in *Kuhali v. Reno*, 266 F.3d 93, 100 (2d Cir. 2001), "the fact that a court may entertain such jurisdictional issues does not mean that Congress has provided a substitute forum for the resolution of those issues on the merits." Thus, without considering which claims or portions of claims the Fifth Circuit might or might not be able to consider pursuant to its jurisdiction to determine its own jurisdiction, this court holds that this limited jurisdictional inquiry is insufficient to justify application of the second part of the *Requena* rule in these cases, assuming *arguendo* that rule survives *St. Cyr.* Accordingly, this court concludes that it has subject matter jurisdiction over these habeas petitions even if the DHS is correct that the court of appeals could consider *all* of the petitioners' statutory and constitutional claims despite the jurisdiction-stripping provisions of 8 U.S.C. § 1252.

This court also disagrees with the DHS regarding this latter contention — that the Fifth Circuit could and would consider all of the petitioners' claims. As noted above, some of the petitioners' claims could be reached during the Fifth Circuit's inquiry into whether § 1252(a)(2)(C)'s jurisdictional bar is applicable to these petitioners.[11] However, several of their

---

[11]    Thus, the Fifth Circuit could, on direct appeal, determine whether the factors necessary to trigger the jurisdiction-stripping provision exist in each of these cases; i.e., whether the petitioner is 1) an alien 2) who is removable 3) because he committed an aggravated felony or a controlled substance offense. *Flores-Garza*, 328 F.3d at 802; *Fernandez-Bernal v. Attorney General*, 257 F.3d 1304, 1308 (11th Cir. 2001); *see also Seale v. INS*, 323 F.3d 150, 153-54 (1st Cir. 2003) (noting that an appellate court may determine, as a threshold matter, "whether the alien is within the category of aliens removable because of a conviction for a qualifying crime").

claims are not related to this jurisdictional inquiry,[12] and are therefore probably unreachable by virtue of the jurisdictional bar.[13] Even the transitional rules cases relied upon by the DHS

---

In two of the three cases this could arguably lead to a quick resolution of the appeal. While highly unlikely, in Calderon-Terrazas's case the Fifth Circuit could resolve the entire case by holding that it has jurisdiction because Calderon-Terrazas's conviction is not an aggravated felony. Likewise, in Reyna-Montoya's case, the Fifth Circuit could find that it has jurisdiction because Reyna-Montoya has not been convicted due to the revised language in the new *nunc pro tunc* judgment. It could then grant relief from the two underlying BIA decisions because neither alien would be considered removable under 8 U.S.C. § 1227(a)(2). Yet these two cases are somewhat unique and the piecemeal resolution of these matters could not have been an intended or a desired result under either the legislative scheme designed by Congress or by the Supreme Court in its resolution of *St. Cyr.*

Further, the Fifth Circuit could also theoretically consider constitutional challenges that relate to the lawful application of § 1252's jurisdiction-stripping provisions, but that jurisdiction would still fall short of resolving all the issues at hand and would still necessitate multiple courts handling different issues. *See Cedano-Viera,* 324 F.3d at 1067-68 (noting that appellate court may address constitutional challenges to application of the triggering factors in jurisdiction-stripping statute because in such a case "the constitutional issue . . . [is] the jurisdictional issue"). As stated previously, this court feels it is somewhat farfetched that such a piecemeal approach is desirable or was intended.

[12]    For example, the petitioners' substantive due process claim that a combination of changes in the immigration laws have created a conclusive presumption against discretionary relief from removal probably could not be considered jurisdictional in nature. This claim is best understood as an attack on the petitioners' ineligibility for cancellation of removal per § 1229b(a)(3), not on their status as aliens convicted of aggravated felonies per se. Further, Calderon-Terrazas's due process challenge that the BIA did not conduct a meaningful review of his appeal is clearly a non-jurisdictional claim.

[13]    In *Flores-Garza,* the Fifth Circuit noted a pre-*St. Cyr* opinion stating in *dicta* that an appellate court could consider even non-jurisdiction-related claims on direct review in spite of § 1252's jurisdiction-stripping provisions, but declined to decide whether that position survived *St. Cyr.* 328 F.3d at 803 n.5 (citing *Balogun,* 270 F.3d at 278 n.11). It seems unlikely. Seemingly, the rationale for this less-than-literal interpretation of the jurisdiction-stripping provisions was to deflect Suspension Clause concerns raised by the Fifth Circuit's ruling in *Max-George v. Reno,* 205 F.3d 194 (5th Cir. 2000), which held that the jurisdiction-stripping provisions eliminated habeas jurisdiction for aliens who fell within its terms. Since the Court vacated *Max-George* in light of *St. Cyr, see Max-George v. Ashcroft,* 533 U.S. 945 (2001), that rationale no longer applies. In fact, the Seventh and Ninth Circuits have both recently held that

strongly implied that habeas jurisdiction still exists for non-jurisdictional constitutional and statutory claims. *See Requena-Rodriguez*, 190 F.3d at 305 (holding that habeas jurisdiction under the transitional rules includes constitutional and statutory challenges that cannot be considered on direct review by the court of appeals); *Santos*, 228 F.3d at 595 (same); *Rivera-Sanchez*, 198 F.3d at 547-48 (same).

Furthermore, even if the Fifth Circuit could theoretically consider all of the petitioners' claims, it might not need to do so in order to satisfy itself that the jurisdictional bar applies, in which case the petitioners would be left without any judicial forum for many of their claims were it not for this court's habeas jurisdiction. That is, the Fifth Circuit could, and most likely would, simply determine the applicability of the jurisdiction-stripping provisions without reaching any or all of the petitioners' statutory and constitutional challenges. *See Flores-Garza*, 328 F.3d at 802-03 (refusing INS's invitation to consider the scope of its jurisdiction to entertain constitutional challenges that go to application of the jurisdiction-stripping provisions of § 1252 because court could simply hold, based on undisputed facts, that petitioner was an alien removable by reason of two marijuana convictions).

For example, in determining that Pequeno-Martinez is removable because he committed a controlled substances offense, *see* 8 U.S.C. § 1252(a)(2)(C), the Fifth Circuit might avoid deciding his statutory and constitutional challenges to the BIA's interpretation of the INA's definitions of "conviction" and "aggravated felony." Section 1252(a)(2)(C) provides that the

non-jurisdiction-related constitutional claims cannot be heard on a petition for direct review. *See Cedano-Viera*, 324 F.3d at 1069-70; *Bosede v. Ashcroft*, 309 F.3d at 446 (cited in *Flores-Garza*, 328 F.3d at 803 n.5).

court of appeals lacks jurisdiction if the "alien" is "removable" for having "committed" a controlled substance offense as defined by 8 U.S.C. § 1182(a)(2)(A)(i)(II). First, there is no dispute that Pequeno-Martinez is an alien. Next, the court could take notice of the petitioner's undisputed guilty plea as evidence that he "committed" a controlled substance offense, without ever having to consider Pequeno-Martinez's challenge to the BIA's interpretation of IIRIRA's definition of "conviction" in *Matter of Roldan*. *See Fernandez-Bernal*, 257 F.3d at 1308-09. Finally, Pequeno-Martinez is removable if, per 8 U.S.C. § 1182(a)(2)(A)(i), he is convicted of, or "admits having committed," a controlled substance violation. 8 U.S.C. § 1252(a)(2)(C). Again, the undisputed guilty plea is determinative of this jurisdictional fact. *See Fernandez-Bernal*, 257 F.3d at 1309. Thus, the court would not need to consider whether the BIA correctly determined that Pequeno-Martinez had been convicted of an aggravated felony.

In each of these cases the Fifth Circuit could consider some but not all of the petitioner's claims. If the DHS's position prevails, then, these petitioners would have to split their claims between the court of appeals and the district court, or, more likely, present their jurisdiction-related claims to the Fifth Circuit first, then present their non-jurisdiction-related claims to this court if the Fifth Circuit denies jurisdiction. This would unnecessarily increase the delay and complexity of a system of review that is already long and complicated. As counsel for Reyna-Montoya noted in a brief filed in the *Salazar-Regino* case, no court has ever ordered such a procedure, and for good reason. This court will not be the first.

Accordingly, this court rejects the DHS's jurisdictional arguments and concludes that it has habeas jurisdiction over all of the petitioners' statutory and constitutional claims.

## V.    CALDERON-TERRAZAS'S PETITION IS DENIED

### A.    Statutory Claims

Calderon-Terrazas pled guilty to two counts of sexual assault of a child in violation of Texas Penal Code § 22.11(a)(1) in December 2000 in a Texas criminal court.[14] Rather than enter a formal finding of guilt or a judgment, the court deferred adjudication of the case and imposed a six-year term of community supervision pursuant to article 42.12 § 5(a) of the Texas Code of Criminal Procedure.  The immigration judge concluded that Calderon-Terrazas was both removable and ineligible for cancellation of removal because he had previously been convicted of an aggravated felony.  *See* 8 U.S.C. § 1101(a)(43)(A) (providing that "sexual abuse of a minor" is an aggravated felony); 8 U.S.C. § 1101(a)(48)(A) (providing that a conviction consists of a finding or admission of guilt plus some restraint on liberty); 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); 8 U.S.C. § 1229b(a)(3) (providing that aliens convicted of aggravated felonies are ineligible for cancellation of removal).

---

[14]    Calderon-Terrazas pled guilty in December 2000 to two counts of "sexual assault of a child" under Texas Penal Code § 22.11.  Section 22.11 describes two sets of crimes: subsection (a)(1) crimes involve sexual contact while subsection (a)(2) crimes do not.  There is no doubt that Calderon-Terrazas was charged with and pled guilty to two subsection (a)(1) violations.  Subsection (a)(1) violations are felonies of the second degree, whereas non-contact (a)(2) violations are felonies of the third degree, *see* Tex. Pen. Code § 22.11(d), and the charging document indicates that Calderon-Terrazas was charged with a felony of the second degree.  Further, the charging document stated that Calderon-Terrazas penetrated the sexual organ of a female child younger than 17 years of age and not his spouse; this corresponds to subsection (a)(1), which states that "(a) [a] person commits an offense if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person:  (1) engages in sexual contact with a child or causes the child to engage in sexual contact."

Calderon-Terrazas argues that his deferred adjudication does not amount to a conviction because no adjudication of guilt has been entered against him in state court, or ever will be if he complies with the terms of his community supervision. [Pet. for Writ of Habeas Corpus at ¶ 14-18, 34-35, 39; Pet.'s Additional Points and Authorities in Support of Pet. For Habeas Corpus at 2-4] However, this argument has been foreclosed by clear Fifth Circuit and BIA precedent. *See Moosa v. INS*, 171 F.3d 994, 1005-06 (5th Cir. 1999) (holding that Texas deferred adjudications constitute convictions under 8 U.S.C. § 1101(a)(48)(A) because they involve an admission of guilt plus some restraint on liberty); *Matter of Punu*, 22 I. & N. Dec. 224 (BIA 1998) (same). Calderon-Terrazas pled guilty to sexual assault of a child and received six years of community supervision; therefore, he stands convicted under 8 U.S.C. § 1101(a)(48)(A).

Calderon-Terrazas further argues that he cannot be considered to have been convicted of an aggravated felony because he was not sentenced to any term of imprisonment for his crime. [Pet.'s Additional Points and Authorities in Support of Pet. For Habeas Corpus at 2-4] Calderon-Terrazas asserts that anyone "adjudged guilty" of a felony in Texas must be sentenced to a term of imprisonment, even if that aspect of the sentence is ultimately suspended and the individual placed on probation instead. *See* Tex. Pen. Code § 12.32-35 (Vernon's 2002) (providing ranges of imprisonment terms for individuals "adjudged guilty" of different classes of felonies). Calderon-Terrazas argues that since he has not been sentenced to a term of imprisonment, he has not been convicted of a felony. This may well be true for purposes of

23

Texas state law.[15] However, the definitions of "conviction" and "aggravated felony," as those

terms are used in the immigration statutes, are matters of federal law; they are not interpreted in

accordance with state law unless federal law so provides. *See Moosa*, 171 F.3d at 1006 (citing

*United States v. Campbell*, 167 F.3d 94, 97 (2d Cir. 1999)). *Moosa* held that the definition of

"conviction" is solely a matter of federal law. *Id.* This court is likewise convinced that the

immigration laws provide no hint that the phrase "sexual abuse of a minor" — the type of

aggravated felony at issue in Calderon-Terrazas's case — is to be interpreted by reference to state

law. *See United States v. Zavala-Sustaita*, 214 F.3d 601, 604 (5th Cir. 2000) (reasoning that

Congress intended the words "sexual abuse of a minor" to carry their "ordinary, contemporary,

common" meaning).

      Finally, in his post-hearing brief Calderon-Terrazas contends that the phrase

"sexual abuse of a minor" in 8 U.S.C. § 1101(a)(43)(A) should not be interpreted to include state

laws that are broader in scope than the federal sexual abuse laws at 18 U.S.C. § 2241 *et seq.*

Calderon-Terrazas notes that the female in question was 16 years old at the time of the incident,

whereas the upper age limit under the federal sexual abuse laws is 15.[16] *See* 8 U.S.C. § 2241(c);

---

[15]     Adjudication of guilt is withheld for those who receive deferred adjudications in Texas. Tex. Code Crim. Pro. art. 42.12 § 5(a). Therefore, one who receives a deferred adjudication and successfully serves his period of community supervision is not considered to have been convicted of any crime, either a misdemeanor or a felony. *Id.* at § 5(c). Calderon-Terrazas may also be correct that even while serving his period of community supervision he would not be considered convicted of a felony for purposes of disqualifications and disabilities imposed by state law.

[16]     Calderon-Terrazas also contends that the alleged acts were consensual, though this is not a defense under either the federal or state statutes.

8 U.S.C. § 2243(a)(1). However, the argument that the phrase "sexual abuse of a minor" in § 1101(a)(43)(A) must be defined with reference to the federal sexual abuse laws has been rejected by the Fifth Circuit as well as every other circuit that has considered the issue. *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1065-67 (9th Cir. 2003) (citing *United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999)); *United States v. Padilla-Reyes*, 247 F.3d 1158, 1164 (11th Cir. 2001); *Lara-Ruiz v. I.N.S.*, 241 F.3d 934, 941-42 (7th Cir. 2001); *Zavala-Sustaita*, 214 F.3d at 607 n.8.

Rather, the Fifth Circuit has held that Congress intended the words "sexual abuse of a minor" to carry their "ordinary, contemporary, common" meaning. *Zavala-Sustaita*, 214 F.3d at 604 (citations omitted). Courts must employ a "categorical approach" to determine whether Congress intended the phrase "sexual abuse of a minor" to include conduct punished under a particular state statute, examining whether the elements of the offense describe "sexual abuse of a minor" rather than whether the specific charged conduct would come within the meaning of the phrase. *Id.* at 603 (citations omitted). The elements of a § 22.11(a)(1) offense describe the very heartland of the ordinary, common meaning of the phrase, "sexual abuse of a minor." Indeed, if a violation of the non-contact subsection of § 22.11 constitutes "sexual abuse of a minor," *see Zavala-Sustaita*, 214 F.3d at 607, a violation of a subsection requiring proof of sexual contact must, *a fortiori*, also satisfy the definition. *Cf. id.* at 604 n.3 (noting that the Fifth Circuit has held that all § 22.11(a)(1) violations constitute crimes of violence and, therefore, aggravated felonies for sentencing purposes). Thus, the fact that Calderon-Terrazas could not have been prosecuted under 18 U.S.C. § 2243 does not change this court's conclusion that his

25

deferred adjudication for sexual assault under Texas Penal Code § 22.11(a)(1) constitutes an

aggravated felony under 8 U.S.C. § 1101(a)(43)(A).

   Calderon-Terrazas briefly contended at oral argument that *Zavala-Sustaita* is not

controlling here because that was a Sentencing Guildelines case and this is an immigration case.

This argument flies in the face of *Hernandez-Avalos*, which bluntly rejected this very distinction,

reasoning that the same words of the same phrase of the same statute cannot have different

meanings in different contexts.  251 F.3d at 509-10; *see also Cedano-Viera*, 324 F.3d at 1066-67

(rejecting argument that Sentencing Guidelines case construing phrase "sexual abuse of a minor"

was not controlling in immigration context); *cf. United States v. Martinez-Carillo*, 250 F.3d

1101, 1104-05 (7th Cir. 2001) (holding that LPR was properly deemed convicted of an

aggravated felony because state conviction fit squarely within federal understanding of the phrase

"sexual abuse of a minor," and citing Sentencing Guidelines case in support of this conclusion).

Thus, all of Calderon-Terrazas's statutory claims fail.

## B.  Constitutional claims

   All three petitioners have raised common procedural and substantive due process

claims; these claims are identical to the due process claims raised in the cases consolidated with

*Salazar-Regino*.  These claims arise out of the changes in statutory and case law detailed in Part

II that have rendered many LPRs with relatively minor criminal histories subject to removal

without eligibility for discretionary relief.  Though this is undoubtedly a harsh and unexpected

result in many cases, this court concludes that it does not violate due process, at least not in

26

Calderon-Terrazas's case.[17] This court also rejects Calderon-Terrazas's distinct due process claims — that the phrase "sexual abuse of a minor" at 8 U.S.C. § 1101(a)(43)(A) is unconstitutionally vague and that the BIA's use of its new summary affirmance procedure unconstitutionally deprived Calderon-Terrazas of his right to meaningful review of the immigration judge's removal order.

### 1.    Procedural due process claims

In his response to the DHS's motion to dismiss, Calderon-Terrazas claims that his procedural due process rights to fair notice were violated by the retroactive application of the Fifth Circuit's decision in *Hernandez-Avalos* (2001) and the BIA's decision in *Roldan-Santoyo* (1999). These claims are borrowed practically verbatim from Reyna-Montoya's response to the DHS's motion to dismiss; the same claims were later alleged verbatim in Pequeno-Martinez's response to the DHS's motion to dismiss. This court holds that these claims have no application to Calderon-Terrazas, regardless of their merits in the other two petitioners' cases.

Reyna-Montoya and Pequeno-Martinez argue that their rights to fair notice of the immigration consequences of their guilty pleas have been violated in two ways. First, the retroactive application of *Hernandez-Avalos* (via the BIA's 2002 decision in *Salazar-Regino*), which held that state felony drug possession convictions arising in the Fifth Circuit are aggravated felonies, has rendered these petitioners ineligible for discretionary cancellation of removal under 8 U.S.C. § 1229b. Second, the retroactive application of the BIA's 1999 decision

---

[17]    This court has stayed resolution of Reyna-Montoya and Pequeno-Martinez's petitions, involving their constitutional claims. *See infra* Parts VI and VII.

in *Matter of Roldan-Santoyo*, which held that IIRIRA's new definition of conviction (now

contained in 8 U.S.C. § 1101(a)(48)(A)) abrogated *Matter of Manrique*, means that these

petitioners will be considered "convicted" for immigration purposes even though they received

deferred adjudications under a Texas rehabilitative statute. The petitioners claim that these

severe consequences could not have been envisioned when each entered plea bargains and agreed

to plead guilty to simple possession charges in exchange for deferred adjudication and

community supervision. This court does not need to reach the merits of Pequeno-Martinez and

Reyna-Montoya's procedural due process claims at this juncture.

      Nevertheless, even if this court agreed with those petitioners' claims, it would still

reject Calderon-Terrazas's claim. First, *Matter of Roldan-Santoyo* was decided in 1999, whereas

Calderon-Terrazas pled guilty in 2000; thus, that case could only have *prospective* application to

Calderon-Terrazas. Second, the controlling BIA decision in Calderon-Terrazas's case is actually

the 1998 decision of *Matter of Punu*, 22 I. & N. Dec. 224, in which the BIA held that Texas

deferred adjudications are convictions under 8 U.S.C. § 1101(a)(48)(A). Third, *Hernandez-Avalos* has no direct relevance to Calderon-Terrazas's case. That case held that state felony

convictions for possession of controlled substances that would only be misdemeanors if

prosecuted under federal law are still aggravated felonies for both sentencing and immigration

purposes. 251 F.3d at 508-10. The BIA finally conceded this point in *Salazar-Regino* in 2002;

previously it had reached the opposite conclusion.[18] In contrast, Calderon-Terrazas pled guilty to

sexual assault of a child under Texas Penal Code § 22.11(a)(1). There has never been any cause

---

[18]     *See supra* n.5 and accompanying text.

for doubt that the conduct proscribed by Texas Penal Code § 22.11(a)(1) constitutes "sexual abuse of a minor" and therefore is an aggravated felony under 8 U.S.C. § 1101(a)(43)(A).[19] Calderon-Terrazas simply cannot claim surprise that the immigration judge and the BIA would reach that conclusion.

Calderon-Terrazas also raises two independent procedural due process challenges. First, in his post-hearing brief Calderon-Terrazas suggests that the phrase "sexual abuse of a minor" is unconstitutionally vague because it is subject to different definitions depending upon which federal code provision is in issue. It appears that no court of appeals has yet considered this issue. However, several appellate courts, including the Fifth Circuit, have rejected the related argument that the rule of lenity should be applied to define this phrase, holding that its meaning is unambiguous. *See Zavala-Sustaita*, 214 F.3d at 608 n.11 (reasoning that rule of lenity only applies when there is a reasonable doubt about a statute's intended scope, and holding that the phrase is not ambiguous); *see also Lara-Ruiz v. INS.*, 241 F.3d 934, 942 (7th Cir. 2001); *United States v. Padilla-Reyes*, 247 F.3d 1158, 1164 (11th Cir. 2001). In each of these cases the court also rejected the argument addressed above in Part V.A., that the phrase "sexual abuse of a minor" at 8 U.S.C. § 1101(a)(43)(A) must be limited to the meaning given that phrase in the federal sexual abuse laws. Thus, these cases stand for the proposition that the same term or phrase may have different definitions in different code provisions and still not be considered ambiguous. Recognizing, of course, that the void-for-vagueness test is a distinct doctrine from the rule of lenity, this court concludes that the phrase is not unconstitutionally vague as applied to

---

[19]        *See supra* Part V.A.

29

Calderon-Terrazas.  It provides adequate notice to Calderon-Terrazas that his conduct would be

considered an aggravated felony for immigration purposes.  *See City of Chicago v. Morales*, 521

U.S. 41, 56 (1999) (plurality) (stating that vagueness may invalidate a criminal law if it "fail[s] to

provide the kind of notice that will enable ordinary people to understand what conduct it

prohibits"); *see also Chapman v. United States*, 500 U.S. 453 (1991) (citing *United States v.

Powell*, 423 U.S. 87, 92 (1975)) (holding that where individual challenging statute on vagueness

grounds does not contend that first amendment freedoms are threatened, his "vagueness claim

must be evaluated as the statute is applied to the facts of [his] case").

Second, Calderon-Terrazas contends that his due process rights were violated by

the BIA's use of its new summary affirmance procedures in his case.  Pursuant to 8 C.F.R. §

1003.1(a)(7) (West 2003), a single board member to whom a case is assigned may affirm the

immigration judge's decision without opinion if 1) the decision is correct, 2) any errors were

harmless, and 3) the issues on appeal are either squarely controlled by existing Board or federal

court precedent or so insubstantial that three-member review is not warranted.  The regulation

provides that an affirmance without opinion "does not necessarily imply approval of all of the

reasoning of" the decision below.  8 C.F.R. § 1003.1(a)(7).  The Fifth Circuit recently approved

use of this procedure, holding that these summary affirmance procedures "do not deprive this

court of a basis for judicial review and . . . do not violate due process."  *Soadjede v. Ashcroft*, 324

F.3d 830, 832-33 (5th Cir. 2003); *see also Albathani v. INS*, 318 F.3d 365 (1st Cir. 2003) (same).

The court in *Soadjede* explained that the alien's right to meaningful judicial review was not

impinged by the summary affirmance procedures because the court would simply treat the

30

immigration judge's decision as the final agency decision.  324 F.3d at 832-33.

Calderon-Terrazas implies, however, that even if use of the summary affirmance procedures is generally constitutional, it was not in his case because the immigration judge failed to provide any reason for its conclusion that Calderon-Terazas's deferred adjudication for sexual assault of a child constituted a conviction of an aggravated felony.  Therefore, in the absence of a written opinion from the BIA, there is no way for this court to conduct a meaningful review of the agency decision.  Calderon-Terrazas is certainly correct that the immigration judge's decision is poorly reasoned and drafted.  The opinion cites several decisions that have no apparent applicability to Calderon-Terrazas's case and then suggests that these cases somehow compel the conclusion that Calderon-Terrazas was convicted of an aggravated felony.[20]  [*See* Resp.'s Return

---

[20]    Specifically, the immigration judge cited *Salazar-Regino, Lujan-Armendariz, Hernandez-Avalos,* and *Hinojosa-Lopez,* [Administrative R. at 35-36], all of which are relevant to determining the immigration consequences of prior state felony drug possession charges that resulted in deferred adjudications, *see* Part II (describing these cases as they relate to Pequeno-Martinez's habeas petition), but have nothing to do with a prior sentence of deferred adjudication for sexual assault of a child.

It appears that the judge's unexplained reliance on *Salazar-Regino* may have been prompted by Calderon-Terrazas's counsel's argument before the immigration judge that the *Lujan* decision should be adopted by the BIA in cases arising in the Fifth Circuit, and that, if it were, Calderon-Terrazas would be entitled to relief. [Administrative R. at 43-44] After oral argument before the immigration judge, the BIA issued its decision in *Salazar-Regino,* in which it decided not to follow *Lujan-Armendariz* in cases outside the Ninth Circuit.  The immigration judge thus relied on *Salazar-Regino* to reject Calderon-Terrazas's argument. [Administrative R. at 50] The problem with this resolution, of course, is that even if the BIA had adopted *Lujan-Armendariz* nationwide, that decision only applied to first-time *drug* offenders.  Since Calderon-Terrazas received deferred adjudication following sexual assault charges, *Lujan-Armendariz* seems simply irrelevant to this case.

It remains unclear to this court why the immigration judge cited *Hernandez-Avalos* and *Hinojosa-Lopez* in his oral decision. [Administrative R. at 36] Perhaps the best explanation is that the judge adapted his decision in Calderon-Terrazas's case from another decision involving an alien who had received deferred adjudication and community supervision

and Mot. to Dismiss, Ex. C, at 3] Nonetheless, because Calderon-Terrazas raised only legal

arguments before the immigration judge and the BIA, and this court reviews such issues *de novo*,

the absence of a well-reasoned agency decision is no impediment to this court's review.

Calderon-Terrazas cites several cases suggesting that the BIA's decision must be

remanded if it fails to provide adequate reasons for its decision. *See Mousa v. I.N.S.*, 223 F.3d

425, 430 (7th Cir. 2000); *Rodriguez-Gutierrez v. I.N.S.* 59 F.3d 504, 508 (5th Cir. 1995); *Panrit

v. I.N.S.*, 19 F.3d 544, 545-46 (10th Cir. 1994); *Diaz-Resendez v. I.N.S.* 960 F.2d 493, 495 (5th

Cir. 1992). Although none of these cases discuss due process concerns, Calderon-Terrazas

argues that they support his claim that the failure of both the immigration judge and the BIA to

provide adequate reasoning in his case constitutes a due process violation. These cases are

readily distinguished. In each the court of appeals was reviewing an issue that was largely fact-

driven and committed to the agency's discretion. *See Mousa*, 223 F.3d at 430 (reviewing

immigration judge's determination that alien did not have a "well-founded fear of persecution"

for abuse of discretion); *Rodriguez-Gutierrez*, 59 F.3d at 508 (reviewing BIA's denial of motion

to reopen for abuse of discretion); *Panrit*, 19 F.3d at 545 (reviewing BIA's determination of

"extreme hardship" for abuse of discretion). *Diaz-Resendez*, 960 F.2d at 495 (reviewing BIA's

denial of § 212(c) relief for abuse of discretion). In such cases the only meaningful appellate

---

following drug possession charges.

       Whatever the explanation, this court certainly sympathizes with Calderon-
Terrazas's frustrations regarding the immigration judge's vague opinion, frustrations which could
only have been exacerbated by the BIA's summary affirmance. All litigants in all courts are
entitled to reasons, not just results. This is true for those whose claims for relief are rejected, and
especially true when the stakes are as high as they are in these cases.

review of the agency's decision is procedural — the court ensures that the agency has considered all of the evidence and all of the proper factors in reaching its decision. *See Panrit*, 19 F.3d at 545 (noting that while "the abuse of discretion standard [] provides only limited room for substantive review, we may still scrutinize the [Board's] decision for procedural regularity") (citation omitted). In these types of cases, the agency could effectively evade judicial review if it is not required to articulate the basis for its decision. In contrast, all of Calderon-Terrazas's arguments before the immigration judge and the BIA concerned only pure issues of law. Since these are reviewed *de novo*, this court can evaluate the agency's decision even if it has not provided adequate reasoning.

Finally, the court notes that the three summary affirmance criteria are met here. For the reasons already discussed, *see supra* Part V.A, the immigration judge's decision was correct. Accordingly, his reasoning errors were harmless. Finally, all of Calderon-Terrazas's arguments before the immigration judge were resolved by existing Fifth Circuit or BIA precedent.[21] Thus, the BIA's use of its summary affirmance procedures in this case was both

---

[21]      Admittedly, no Fifth Circuit or BIA decision has held that violations of Texas Penal Code § 22.11(a)(1) constitute "sexual abuse of a minor." However, as noted above, if non-contact § 22.11(a)(2) violations categorically satisfy this definition, *see Zavala-Sustaita*, 214 F.3d at 607, *and Matter of Rodriguez-Rodriguez*, 22 I. & N. Dec. 991 (BIA 1999), then, *a fortiori*, section 22.11(a)(1) violations involving sexual contact must also. Further, the Fifth Circuit has held categorically that a § 22.11(a)(1) violation is a "crime of violence" within the meaning of 18 U.S.C. § 16(b), and therefore is an aggravated felony for sentencing purposes. *United States v. Velazquez-Overa,* 100 F.3d 418, 422-23 (5th Cir. 1996). Section 1101(a)(43)(F) of Title 8 makes crimes of violence aggravated felonies for immigration purposes, and cross-references 18 U.S.C. § 16(b) for the definition of "crime of violence." Therefore, Calderon-Terrazas's deferred adjudication for sexual assault of a child amounts to an aggravated felony under two separate provisions of 8 U.S.C. § 1101(a)(43) as these provisions have been interpreted by the Fifth Circuit Court of Appeals.

constitutional and consistent with governing regulations.

In conclusion, all of Calderon-Terrazas's procedural due process claims are rejected on their merits.

### 2.    Substantive due process claims

The scope of the petitioners' substantive due process claims is somewhat confusing. Calderon-Terrazas argues in his post-hearing brief that "the definitions of 'conviction' and 'aggravated felony'[] as applied by the IJ and the BIA violate his right to substantive due process." [Pet. Additional Points and Authorities, at 7] Elsewhere, he argues that "[section] 1101(a)(48)(A) is not narrowly tailored to serve a compelling state interest, and that as applied herein, it violates Substantive Due Process." [Pet.'s Opp. to Resp.'s Mot. to Dismiss, at 6] However, the petitioners in general, and Calderon-Terrazas in particular, never explain how the definition of "aggravated felony" or "conviction" results in any due process violation on its own. Rather, the recurring theme is that these petitioners' due process rights were violated by a *combination* of statutes, not by any single provision. Thus, Calderon-Terrazas urges as follows:

> [T]he combination of provisions enacted by IIRIRA, [including] 8 U.S.C. § 1101(a)(48)(A), together with the repeal of § 212(c), which was replaced by 8 U.S.C. § 1229b(a), containing an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," (plus the overly expansive definition of what now constitutes such "aggravated felonies"), creates an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable. Thus, it is submitted, these provisions are not sufficiently narrowly tailored to meet a compelling state interest.

34

[Pet.'s Opp. to Resp.'s Mot. to Dismiss, at 5; *see also id.* at 7; Pet. Additional Points and Authorities, at 6-7] It seems that the petitioners' argument might be reduced to the following claim: this combination of statutes is unconstitutional because it denies these aliens the opportunity to petition for discretionary cancellation of removal. Of course, the petitioners would resist this characterization of their claims, because the Fifth Circuit has recently and repeatedly held that aliens have no protected liberty or property interest in eligibility for discretionary relief from deportation.[22] However, the petitioners' collective pleadings do not meaningfully pursue any other substantive due process claim. In any event, to the extent Calderon-Terrazas claims a substantive due process entitlement to discretionary relief from deportation, his claim fails — indeed, it lies buried under a mountain of precedent. *See supra* n.22.

---

[22]    *See United States v. Lopez-Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002) (holding that immigration judge's failure to explain alien's eligibility for discretionary relief was not fundamentally unfair because "eligibility for § 212(c) relief is not a liberty or property interest warranting due process protection"); *Lopez de Jesus v. INS*, 312 F.3d 155, 163 (5th Cir. 2002) (holding that retroactive application of IIRIRA § 212(d)(11) which "limited only Lopez's eligibility for discretionary relief and did not infringe on a right he possessed prior to its enactment" was not unconstitutional); *Gonzalez-Torres v. INS*, 213 F.3d 899, 902 (5th Cir. 2000) (holding that retroactive application of IIRIRA's stop-time rule, which had the effect of rendering aliens ineligible for discretionary relief, did not violate due process because aliens have no protected interest in their eligibility for discretionary relief); *Finlay v. INS*, 210 F.3d 556, 557 (5th Cir. 2000) (holding that retroactive application of expanded definition of aggravated felony which rendered alien ineligible for discretionary relief did not rise to the level of a due process violation because alien was not entitled to such relief); *Alfrache v. Cravener*, 203 F.3d 381, 383-84 (5th Cir. 2000) (holding that § 212(c) relief conveys no due process rights because it is "a piece of legislative grace," "couched in conditional and permissive terms") (internal citation omitted).

Assuming Calderon-Terrazas also claims substantive due process rights not to be considered convicted and not to be considered an aggravated felon, these claims also fail. While aliens have certain substantive due process rights, *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001), these rights are subject to limitations and conditions that would be unacceptable if applied to citizens. *Demore v. Hyung Joon Kim*, 123 S. Ct. 1708, 1716-17 (2003) (citing *Zadvydas*, 533 U.S. at 718 (Kennedy, J., dissenting)). Of particular importance to this case, the Supreme Court has long recognized that Congress has plenary authority over substantive immigration decisions under art. I, § 8, cl. 4 of the Constitution, *INS v. Chadha*, 462 U.S. 919, 941 (1983), and that "the power to expel or exclude aliens [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *see also Matthews v. Diaz*, 426 U.S. 67, 81-82 (1976) (recognizing that "the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government"). Of course, the Court has long distinguished between Congress's plenary power to set immigration policy, which is virtually unreviewable, and the procedures used to implement that policy, which are subject to more exacting judicial review.[23] Unfortunately for Calderon-

---

[23]    *See Zadvydas*, 533 U.S. at 695-96 (invalidating the indefinite detention of aliens incapable of removal after first explaining that "[t]he question before us is not one of conferring on those admitted the right to remain against the national will or sufferance of aliens who should be removed"); *Chadha*, 462 U.S. at 941-42 (reasoning that while Congress has plenary power to create immigration law, it must choose a constitutionally permissible means of implementing that power); *Patel v. Zemski*, 275 F.3d 299, 307-08 (3d Cir. 2001) (noting that Court distinguishes between "deference that must be afforded to immigration policies and the more searching review of the procedures used to implement those policies") (*overruled sub nom on other grounds by Demore*, 123 S. Ct. at 1721-22); *cf. Galvan v. Press*, 347 U.S. 522, 530-32 (1954) (noting that

Terrazas, the proper scope of what constitutes a "conviction" or an "aggravated felony" for

purposes of immigration law is clearly a matter of substantive immigration policy.

Accordingly, this court will limit its inquiry to a determination of whether

Calderon-Terrazas's inclusion within the scope of these terms is rational.[24] *See Fernandez-*

---

while "[p]olicies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government . . . [i]n the enforcement of these policies, the Executive Branch of the Government must respect the procedural safeguards of due process").

[24]     Thus, this court does not need to conclusively resolve whether the alleged due process rights in this case are considered "fundamental" for purposes of applying strict or heightened scrutiny under the Court's substantive due process jurisprudence. Nonetheless, the court is highly doubtful that any "fundamental" rights, as that term is used, are at stake here. Calderon-Terrazas claims, of course, that the protected interests announced in *Landon v. Plasencia*, 489 U.S. 21, 34 (1982), which include the right of LPRs "to stay and live and work in this land of freedom," and "to rejoin [their] immediate famil[ies]" in the United States, are fundamental; i.e., that they are among those rights which are "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Although the *Landon* court, in describing the "weighty" interests at stake in that case, cited two substantive due process cases involving fundamental rights, *Landon* was a procedural due process case, so the Court did not need to consider the question whether the interests announced therein were also "fundamental." 489 U.S. at 34. Certainly, this court recognizes the importance of those rights, but the petitioners have not identified a single case holding that the *Landon* interests are to be considered "fundamental" for substantive due process purposes, and this court's own independent research has failed to unearth any such cases.

     In fact, as noted by the Fifth Circuit in *Matter of Longstaff*, 716 F.2d 1439 (5th Cir. 1983), the *Landon* opinion itself strongly implies the opposite conclusion. The Fifth Circuit noted that *Landon* imposed "a fair-procedure requirement on the exclusion of aliens returning from aboard," but that "[t]he decision left undisturbed . . . the Court's resolve not to interfere with substantive immigration policies adopted by Congress, regardless of the community ties developed by affected aliens." *Matter of Longstaff*, 716 F.2d at 1443 n.16 (citing *Landon*, 459 U.S. at 34-35). In contrast, holding that LPRs have fundamental rights to remain in this country would entail a substantial amount of interference with Congress's immigration policies. Given both the Court's general reluctance to expand the boundaries of due process, *see Glucksberg*, 521 U.S. at 720-21, and the Court's particular reluctance to interfere with substantive immigration policy, it seems highly doubtful to this court that Calderon-Terrazas's *Landon* interests would be deemed fundamental by either the Fifth Circuit or the Supreme Court. *See Herrera-Inirio v. INS*, 208 F.3d 299, 308-09 (1st Cir. 2000) (rejecting alien's claimed fundamental right to have a state

*Bernal v. Attorney General*, 257 F.3d 1304, 1311-12 (11th Cir. 2001) ("Because federal authority

over aliens is plenary, federal classifications that distinguish among groups of aliens are subject

to relaxed scrutiny under the rational basis standard of review, and are valid unless 'arbitrary or

unreasonable.' ") (citation omitted); *Herrera-Inirio v. INS*, 208 F.3d 299, 308-09 (1st Cir. 2000)

(holding that the "principal indicium of whether immigration legislation offends substantive due

process is whether the law is based upon a 'facially legitimate and bona fide reason,' " and

further explaining that this test is "pretty much the same" as the rational basis test); *cf. Demore*,

123 S. Ct. at 1720 ("[W]hen the Government deals with deportable aliens, the Due Process

Clause does not require it to employ the least burdensome means to accomplish its goal.").  Both

the inclusion of "sexual abuse of a minor" within the panoply of crimes constituting "aggravated

felonies" and the definition of "conviction" provided by 8 U.S.C. § 1101(a)(48)(A) easily pass

this deferential review.

   First, Congress clearly has a legitimate interest in protecting society from sex

offenders, and legislation which makes a conviction for "sexual abuse of a minor" automatic

grounds for deportation (by defining this crime as an aggravated felony) rationally furthers that

interest.  Next, section 1101(a)(48)(A) "grew out of a perceived need for a nationally uniform

definition of the term 'conviction' for immigration purposes." *Herrera-Inirio*, 208 F.3d at 308.

Congress noted that under the former definition of "conviction" in *Matter of Ozkok*, 19 I. & N.

Dec. 546, 551-52 (BIA 1988), some criminal aliens whom Congress intended to be considered

---

law definition of conviction apply rather than the Congressionally-determined definition for these
reasons).

"convicted" escaped the immigration consequences of their crimes by virtue of the technical

operation of certain state rehabilitative statutes. *See* H.R. Conf. Rep. No. 828, 104th Cong., 2d

Sess. 1996. Congress decided to omit the third prong of the *Ozkok* definition to correct this

problem and achieve greater uniformity. *Id.* In particular, Congress sought to ensure that an

alien whose adjudication was deferred, such as Calderon-Terrazas, would still be considered

convicted based on the original finding or confession of guilt. *Id.* This was a reasonable means

of addressing the problem Congress had identified. Accordingly, the definitions of both

"aggravated felon" and "conviction" easily pass muster, and Calderon-Terrazas's substantive due

process claims are denied on their merits.

## VI.    PEQUENO-MARTINEZ'S PETITION IS STAYED PENDING RESOLUTION OF THE CASES CONSOLIDATED WITH *SALAZAR-REGINO*

As noted above in Part II, Pequeno-Martinez originally argued that he was entitled

to relief under *St. Cyr*, but has since withdrawn these claims. [4/29/03 Hr'g at 39] Counsel for

Pequeno-Martinez seemed to imply at oral argument that he may nonetheless be eligible for §

212(c) relief under the proposed regulations that would implement *St. Cyr*. [*Id.* at 39] But those

regulations, which have not to date become law, only purport to affect aliens who, like *St. Cyr*,

were eligible for § 212(c) relief at the time of their guilty pleas. *See* 67 Fed. Reg. 52627, 52628

(Aug. 13, 2002) (providing that aliens who pled guilty before April 1, 1997, would be entitled to

apply for relief under the version of § 212(c) *in effect at the time of their pleas*); *see also id.* at

52629 (providing that aliens who were barred from applying for § 212(c) relief at the time of

their guilty pleas would not be eligible to apply for relief under the proposed regulations). At the

time of Pequeno-Martinez's guilty plea in December 1996, AEDPA § 440(d) made aliens

convicted of aggravated felonies ineligible for § 212(c) relief just as IIRIRA now renders such

aliens ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3).  Further, the crime to

which Pequeno-Martinez pled guilty was considered an aggravated felony at the time of his

guilty plea.  Thus, to the extent Pequeno-Martinez actually contends he is eligible for relief under

the *St. Cyr* proposed regulations, this claim is rejected.  *See Oguijiofor v. Attorney General*, 277

F.3d 1305, 1309-10 (11th Cir. 2002) (reasoning that IIRIRA's repeal of § 212(c) relief had no

retroactive relief on petitioner because he was ineligible for § 212(c) relief pursuant to AEDPA §

440(d) when he pled guilty to charges constituting aggravated felonies in November and

December 1996).

   The remainder of Pequeno-Martinez's claims are identical to those raised in the

*Salazar-Regino* cases.  Accordingly, Pequeno-Martinez and the government have agreed to stay

his petition pending resolution of the cases consolidated with *Salazar-Regino*.  This court will

issue an order to this effect simultaneously with this opinion.

## VII.   BECAUSE REYNA-MONTOYA REMAINS CONVICTED FOR IMMIGRATION PURPOSES NOTWITHSTANDING HIS MODIFIED STATE COURT ORDER OF DEFERRED ADJUDICATION, HIS PETITION IS ALSO STAYED

   As noted in Part II, in December 2002 Reyna-Montoya obtained a modified state

court order of deferred adjudication purporting to withdraw the court's acceptance of Reyna-

Montoya's guilty plea *nunc pro tunc*.[25]  Arguably, this court may not properly consider this

---

[25]   Specifically, the order provides that "the plea of guilt and deferred adjudictation previously entered in this Court on November 1st 2001 . . . be modified to indicate that the Court's order of deferred adjudication *is not based on any guilty plea*.  This Court's previous orders remain constant and in full effect, yet the acceptance of the guilty plea has been withdrawn as if it had never been entered.  The entry of judgment as modified is ordered *nunc pro tunc*."

modified order.  However, it need not resolve this issue, because even if the order is considered,

recent case law from both the Fifth Circuit and the BIA establishes that Reyna-Montoya remains

convicted for immigration purposes notwithstanding the modified order.

The issue of whether this court may consider this order requires a full exposition

of the events leading up to this point.  When this court was first presented with the modified

order in December 2002, the DHS argued that this court should refuse to consider the order

because the BIA had not ruled on it, and that Reyna-Montoya should instead make his case to the

BIA in the form of a motion to reopen.[26]  Reyna-Montoya countered by arguing that motions to

reopen were not required to satisfy 8 U.S.C. § 1252(d)(1)'s exhaustion requirement because they

were not available "as of right."  *See Goonsuwan v. Ashcroft*, 252 F.3d 383, 387-88 (5th Cir.

2001) (holding that, "in general, a petitioner is not required to file a motion to reopen in order for

the district court to have jurisdiction over his habeas petition" because the decision to reopen lies

within the BIA's broad discretion).[27]  The court in *Goonsuwan* further held, however, that even

---

[Notice of Filing Ex. C in Support of Pet. for Writ of Habeas Corpus; emphasis added]

[26]     The DHS also argues that this court should not consider the modified order for the
same reason that it should not consider the habeas petitions in general — the court of appeals
should hear the claims first on a petition for review.  This argument has already been rejected in
the context of determining this court's habeas jurisdiction, *see* Part IV, and has no additional
merit here.

[27]     *Goonsuwan* was based on 8 U.S.C. § 1105a(c) (1995), the predecessor statute to §
1252(d)(1).  Section 1105a(c) provided that "[a]n order of deportation or of exclusion shall not
be reviewed by any court if the alien has not exhausted the administrative remedies available to
him as of right under the immigration laws and regulations."  Although the Fifth Circuit has not
yet reached the issue, at least four courts of appeals have held that § 1252(d)(1), which provides
that "[a] court may review a final order only if (1) the alien has exhausted all administrative
remedies available to the alien as of right," is applicable to habeas review in district courts.

41

though motions to reopen were not required "in general," the petitioner in that case had nonetheless failed to exhaust his administrative remedies because he had not presented the particular claim — ineffective assistance of counsel — to the BIA at any stage of the proceedings. *Id.* at 389-90. At the time, the same was true of Reyna-Montoya's modified order — it had not been considered by the immigration judge or the BIA.

Nonetheless, in late December 2002 Reyna-Montoya moved the BIA to reopen his case based on the modified order. This motion was denied as untimely in February 2003, because it was made more than ninety days after the BIA's July 2002 summary affirmance of the immigration judge's removal order. *See* 8 C.F.R. § 1003.2(c)(2) (providing that a motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened"). The BIA also refused to reopen the case on its own motion, a procedure which is not time-bound. *See id.* at § 1003.2(a) ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision.") Thus, Reyna-Montoya has now presented his modified order to the BIA, and has no further hope of a positive result at the agency level.

However, even if Reyna-Montoya has satisfied § 1252(d)(1)'s exhaustion requirement, there is another reason why this court might arguably refuse to reach the merits of Reyna-Montoya's argument. As noted above, Reyna-Montoya first sought to have this court, rather than the BIA, consider the modified state court order. He only then tried to reopen his case

---

*Sundar v. I.N.S.* 328 F.3d 1320, 1325 (11th Cir. 2003); *Theodoropoulos v. I.N.S.* 313 F.3d 732, 736-37 (2d Cir. 2002); *Kurfees v. INS*, 275 F.3d 332, 336-37 (4th Cir. 2001); *Singh v. Reno*, 182 F.3d 504, 511 (7th Cir. 1999).

before the BIA to overcome any exhaustion requirement this court might impose.  No doubt Reyna-Montoya took this approach because he knew his motion to reopen would be denied as untimely; the new order did not come into existence until after the 90-day window applicable to motions to reopen had closed.  Thus, if this court were to grant relief based on the modified order, it would essentially re-write the time limits governing motions to re-open.  Instead of ninety days, Reyna-Montoya would effectively have until this court entered its final order to uncover or produce new facts.

The parties have not fully briefed this issue, and this court has not been able to locate any case directly on point.  However, at least one circuit court has refused to grant relief that would have the effect of circumventing the 90-day time limit governing motions to re-open, *see Saiyid v. INS*, 132 F.3d 1380, 1386 (11th Cir. 1998) (holding the alien could not circumvent time limits governing motions to reopen by filing motion to remand based on new evidence in court of appeals rather than BIA), and several courts including the Fifth Circuit have looked to the substance of a motion rather than its title to determine whether it should be considered a motion to reopen.  *See Naijar v. Ashcroft*, 257 F.3d 1262, 1301 (11th Cir. 2001) (collecting cases); *Lara v. Trominski*, 216 F.3d 487, 499 n.13 (5th Cir. 2000) (holding that BIA correctly deemed alien's supplemental filing seeking relief not formerly available a motion to reopen).  Given the procedural history in this case, this court might hesitate to grant Reyna-Montoya relief based on the December 2002 modified order.  However, this court need not take this procedural path to reject Reyna-Montoya's claim, because it fails on the merits as well.

43

Reyna-Montoya argues that he is no longer convicted under § 1101(a)(48)(A) because the modified order withdrew his guilty plea as if it had never existed, and there is no other evidence of his guilt besides that plea. This argument is not without support both in prior BIA decisions and in various decisions in which federal courts have deferred to their sister state courts' interpretation of their own orders. In fact, this court finds this issue to be one of the thorniest presented in these three cases. However, as shown below, Reyna-Montoya's argument collides with both the Fifth Circuit's recent decision in *Renteria-Gonzalez v. INS*, 322 F.3d 804, 812-14 (5th Cir. 2002), and the BIA's recent decision in *Matter of Pickering*, 23 I. & N. Dec. 621, 622-25 (BIA 2003).

Reyna-Montoya relies on *Matter of Rodriguez-Ruiz*, 22 I. & N. Dec. 1378 (BIA 2000), in which the BIA held that a conviction vacated on the merits pursuant to a provision of the New York state criminal procedure law did not constitute a conviction for immigration purposes. In that case the BIA distinguished *Matter of Roldan*, 22 I. & N. Dec. 512 (BIA 1999), which held that vacaturs, dismissals, or expungements based on rehabilitative statutes remained convictions for immigration purposes. The BIA reasoned that "[b]ecause we agree that the state court order vacating the conviction does not constitute a state rehabilitative action under *Matter of Roldan*, . . . there is no current basis to find the respondent removable as charged." *Matter of Rodriguez-Ruiz*, 22 I. & N. Dec. 1378. The BIA also refused to "go behind the state court judgment and question whether the New York court acted in accordance with its own state law," despite the INS's contention that the state court only vacated the conviction so that the alien could avoid removal. *Id.* Reyna-Montoya argues that because his modified order was likewise

44

not based on any state rehabilitative statute (a proposition with which this court agrees), or indeed on any statute at all, this court should give effect to that order and find that he is not convicted for immigration purposes. Reyna-Montoya further argues that this court cannot examine whether the state court's order was consistent with state law.[28]

Unfortunately for Reyna-Montoya, the BIA's recent decision in *Matter of Pickering*, 23 I. & N. Dec. 621 (BIA 2003), undermines his reliance on *Matter of Rodriguez*. In *Pickering*, the BIA effectively re-drew the line that had been somewhat ambiguously drawn in *Rodriguez*. Whereas *Matter of Rodriguez* suggested that any type of vacatur other than one issued pursuant to a state rehabilitative statute could wipe out a conviction for immigration purposes, *Matter of Pickering* firmly established that only vacaturs "based on a defect in the underlying criminal proceedings" could have this effect. *See* 23 I. & N. Dec. 621, 624. Thus, if "a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings," the respondent remains 'convicted' for immigration purposes." *Id.* There is neither any evidence nor any allegation that Reyna-Montoya's guilty plea was withdrawn because of a legal defect in the underlying criminal proceeding. Rather, the order only indicates somewhat cryptically that the modification was granted "in the interests of justice and equity, and to avoid a manifest injustice." Further, Reyna-Montoya's counsel has offered two related reasons for the court's order — maintaining a revenue source and retaining jurisdiction — which are

---

[28]     Reyna-Montoya's counsel admits that the state court modified its order to prevent Reyna-Montoya's deportation. Its purpose in doing so, according to counsel, was to maintain its jurisdiction over Reyna-Montoya and preserve a source of revenue in the form of Reyna-Montoya's probation fees for the county in which he was placed on deferred adjudication. [4/29/03 Hearing at pp. 94-97]

consistent with (and inseparable from) a desire to defeat removal, and have nothing to do with any legal defect.

Reyna-Montoya briefly attempts to distinguish *Matter of Pickering* on the ground that it dealt with the immigration consequences of vacated *convictions*, whereas his modified order of deferred adjudication withdrew his *guilty plea*. Recognizing this distinction would defeat Congress's clear intent in enacting § 1101(a)(48)(A). Formal convictions and guilty pleas are both records of guilt. Congress enacted § 1101(a)(48)(A) to ensure that "*the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws,*" *Moosa*, 171 F.3d at 1002 (quoting H.R. Conf. Rep. No. 828, 104th Cong., 2d Sess. 1996, 1996 WL 563320 at *496-97 (emphasis is original)), notwithstanding any "state action which purports to expunge, dismiss, vacate, discharge, or otherwise *remove a guilty plea* or other record of guilt or conviction." *Matter of Pickering*, 23 I. & N. Dec. 621, 622 (emphasis added). Thus, *Matter of Pickering* forecloses Reyna-Montoya's reliance on *Matter of Rodriguez-Ruiz*.

More importantly, Reyna-Montoya remains convicted for immigration purposes under current Fifth Circuit precedent regardless of *Matter of Pickering*. In *Renteria-Gonzalez*, the alien's underlying conviction for transporting aliens was vacated by a federal district court for purposes of defeating deportation. 322 F.3d at 808-09. The Fifth Circuit held that Renteria-Gonzalez's conviction remained valid for immigration purposes notwithstanding the district court's Order to Vacate. *Id.* at 812. The court reasoned that "several circuits, including this court, have held that a vacated state conviction remains valid under § 1101(a)(48)(A); their persuasive reasoning applies with equal force to a vacated federal conviction." *Id.* at 812-13

46

(emphasis and citations omitted).  The BIA interprets the Fifth Circuit's approach in *Renteria-Gonzalez* to be more strict than that of the BIA — i.e., vacated convictions regardless of the reason for the vacatur would remain valid for immigration purposes.  *Matter of Pickering*, 23 I. & N. Dec. 621, 624 n.2 (agreeing with the assessment implied by Judge Benavides's special concurrence in *Renteria-Gonzalez*, 322 F.3d at 822-23).  This court does not read either the majority or special concurring opinion in *Renteria-Gonzalez* as an indication that the Fifth Circuit would hold that a constitutionally infirm conviction remained valid for immigration purposes.  Instead, this court believes the special concurrence was serving as a guidepost or reminder to those reading the opinion that the language of the majority opinion should not be interpreted as crossing the constitutional line.  Nevertheless, regardless of how the Fifth Circuit might treat a conviction vacated based on a constitutional defect, it is clear that a record of guilt vacated for the purpose of defeating removal (to maintain county revenues or for any other reason) remains valid for immigration purposes.  Thus, Reyna-Montoya's argument fails on the merits, and he remains convicted notwithstanding his modified order of deferred adjudication.[29]

---

[29]    This court appreciates the creativity and the zealousness of counsel for Reyna-Montoya in obtaining this new order and in presenting this argument on his behalf.  Certainly, this court is loath to ignore the language contained in an order of a sister court, especially the court from which the original order of deferred adjudication emanates.  Likewise, this court agrees with Petitioner that such a judgment as now tailored is very much like community supervision or many other rehabilitative techniques utilized by courts throughout this state (and others) whereby a first time offender is "punished," but does not enter a plea of guilt.  However, under the BIA's decision in *Matter of Pickering* and the Fifth Circuit's opinion in *Renteria-Gonzalez v. INS*, even the "*nunc pro tunc*" and the "as if it had never been entered" language of the modified order is insufficient to escape the definition of conviction provided at § 1101(a)(48)(A).

Reyna-Montoya's modified order claim having been resolved, his remaining claims are the same as those raised in the cases consolidated with *Salazar-Regino*. Thus, this court hereby stays resolution of Reyna-Montoya's remaining claims pending resolution of the *Salazar-Regino* cases.[30]  A separate order setting forth the terms of this stay is being issued simultaneously with this decision.

## VIII.   CONCLUSION

For these reasons, Calderon-Terrazas's habeas petition is **denied**, Pequeno-Martinez's petition is **denied in part** and **stayed in part**, and Reyna-Montoya's petition is **denied in part** and **stayed in part**.  A separate order is being issued in each case consistent with this opinion.

Signed in Brownsville, Texas on the 8th day of September, 2003.

_____
Andrew S. Hanen
United States District Judge

---

[30]      While this court recognizes that its authority to enter stays pending resolution of cases involving different parties is limited, *see Landis v. North American Co.*, 299 U.S. 248 (1936), no response was filed to the Petitioner's Motion to Hold in Abeyance and as such this court can consider the Petitioner's motion to be unopposed. *See* Local Rules of the Southern District of Texas 7.3 and 7.4.